Nash. J.
 

 It is very certain a Court of Equity will not compel a purchaser to take a title substantially defective, but itjs the privilege of the vendor to complete his title ; and this he may do at any time before a decree.
 
 New-
 
 
 *4
 

 land on Contracts, Ch.
 
 12, 227, 230, provided, there has been no unnecessary delay. 2
 
 Story’s
 
 Eq. Jur. S. 777. The purchaser will not be permitted to deprive him of this right, by forestalling him. If
 
 he
 
 perfects the title, he has got all he bargained for, and can ask from the vendor nothing more, than the expenses he has incurred in removing the defect. In this case, the plaintiff shows that his title, if at first defective, was made complete before the bill was filed. lie, therefore, has got what he bargained for, a good and sufficient title to the lot No. 24. He is not entitled to have his contract with the defendant rescinded. All that he could ask is to be reimbursed, what he paid to Blalock. But, from the view we have taken of the case, we do not think him entitled to this, as we are of opinion, that his title under the defendant was a good one. At the sale of the town lots in Burnsville, among others were those numbered 24 and 25. The plaintiff alleges that the lot 24 was purchased by John Blalock, and the defendant, that Jeremiah Boon, under whom he derives title, bought it. Two depositions are filed by the plaintiff, those of W. L. Lewis, and Jeremiah Boon. Neither of them directly asserts the fact. Mr. Lewis states, that he was present at the sale and ho
 
 thinks
 
 John Blalock was the purchaser of 24, and he
 
 thinks
 
 No. 25 was purchased by Israel Boon for Jerry Boon. He further states, that from the sale, up to the purchase of the present plaintiff, which was in 1838, Jerry Boon occupied lot No. 24 ; that he had a shop and house upon it. Jeremiah Boon, is requested to state which lot he purchased, at the sale by the commissioners. His answer is remarkable.
 
 “
 
 Number 25 was what I always understood — I did not build on the lot I purchased.” He is then asked, “whose lot did you build on,” he answers, “it was number 24, and belonged to Jack Blalock.” He further states, that he never improved his own lot, but lived on, and occupied No. 24. until September 1838,
 
 *5
 
 Jeremiah Boon did not bid off the lot. It was bought for him by Israel Boon. Nor is there any evidence that he was present at the time. If he had been, it is likely he would have been able to state with certainty which lot he did buy. But it is very strange believing, as he professes he did, that lot 24 was purchased by Blalock, he should, evidently with the knowledge of Blalock,-have immediately taken possession of it, and erected buildings on it, and that he should have continued that possession, unquestioned by Blalock, or any one else, from the time of the sale, in 1834, up to the 15th of September 1838, the day when Austin sold to the plaintiff. Attached to these depositions, is a plat of the town of Burnsville, in which it appears that the name'of John Blalock is written on No. 24, but it is no where stated by whom this plat was made, or when, or that it was the one used by the commissioners. It therefore contributes little to the strength of the plaintiff’s claim. On behalf of the defendant two depositions are filed; those of John McEllers, and Joseph Shepherd. The former states, that he was one of the commissioners appointed to lay off the town of Burnsville, and the crier at the sale, and that he made it a rule to stand upon the lot he was selling, and that he thinks and is satisfied, that the lot No. 24, was the one purchased by Israel Boon for Jeremiah Boon. He further states, that a short time after the sale, he met wdth John Blalock in the town of Burnsville, who said he had purchased the lot Jeremiah Boon was improving, and that he had a certificate of purchase, and that
 
 he
 
 replied to him he was still under the impression that the lot below was the one he sold to him, and that the mistake was between him and the other commissioners in making out the certificate, and that Boon was at the time at work on his own lot. Mr. Shepherd, was another of the commissioners, and believes lot No. 24, was purchased by Jeremiah Boon. This is all the testimony in the case, and,
 
 *6
 
 limited as it is, satisfies us, that Jeremiah Boon, was the purchaser of the lot marked No. 24. It is difficult to believe, if it were not so, that Boon, without any contract with Blalock, would have improved the lot he did not buy, and that Blalock would have laid by from ’34 until October 1840, the time when he took his conveyance from the commissioners and sold to the plaintiff, nearly six years, and see Boon improve and use the lot as his own, unquestioned and undisturbed. The difficulty was created, no doubt, as suggested by the commissioner Mr. McElIers. No question is made, that whatever title to the lot in dispute was in Jeremiah Boon, was regularly vested in the defendant Austin, and has, by the deed filed by him, been conveyed to the plaintiff, who refused to receive it, not because of any defect, but because it was much mere convenient to get the lot, with its improvements, for sixty dollars, than for the. sum of $245.
 

 Per Curiam.
 

 Bill dismissed with costs.