Ruffin.
 
 C. J.
 

 The title is certainly defective, as the paper from John to Jesse Cooper is not a deed ; .for, sup posing it to have
 
 been signed by
 
 John, it is not sealed, nor attested, nor acknowledged. The plaintiff had no knowledge of the defect, when he bought; for the defendant, though he had that paper in his possession, did not then show it to him. The equity between the parties in that state of the case would seem to be evident. As the purchase money was not paid, and the vendor had represented the title to be good and covenanted for it, and the vendee did not know otherwise, the latter had a right to insist on its being made good. In order to avoid circuity of action and to secure the purchaser from loss by insolvency of the other party, equity would suspend the payment of the purchase money, until the defect should be supplied, and, indeed, after a reasonable time, would, at the instance of the purchaser, rescind the contract. For, when one bargains for a good title, he
 
 has, in
 
 the view of a Court of Equity, a right to have it made good, as long as the contract in any part is unexecuted, and the case is therefore in such a state, that the Court can lay hold of that part of it, and thereby enforce the parties toa faithful fulfilling of the bargain, as it was intended between them. That is always the case, when the purchase money is behind. For, the Court is able to treat that as a subsisting and stable security, which the vendee ought to have, and it will not put him off with the personal responsibility of the vendor on a remote breach of the covenant for quiet enjoyment. That is the equity between parties, when neither was aware of the defect of title ; for the equity goes on the view taken by the Court of the representations and covenant respecting the title, as obliging the seller to perform it specifically, before he can
 
 *449
 
 draw the price out of the hands of the other party. It is a jurisdiction in the nature of decreeing specific performance, and, in the meanwhile, allowing to the purchaser to hold to the security he has in the purchase money. It is singular, that the defendant could have thought the paper signed by John Cooper was a deed ; and it might be strongly suspected, that he doubted it, and that it was for that reason he did not show it to the plaintiff. But no stress is laid on that, since the plaintiff’s equity, as the matter now stands, does not depend on that at all. If he did not know that the title was defective, then, upon the discovery of it, the vendor had the same right to complete the title, as the vendee had to require him to do so. The plaintiff, after taking a deed and going into possession under it, could not rescind at once, upon finding a flaw; but the other side had a right to mend it. Then, the plaintiff’s duty was to inform the defendant of the defect, when he found it out, and request him to make the title good. That is what he did. If the defendant had then got a good deed from J ohn Cooper, that would have put the title to rest. But he did not; and, insisting most erroneously, indeed, that the title was already good, he refused positively to move another step. Now, whether the defendant knew, or not, that the title was defective, it was so ; and in either case the plaintiff might well have insisted, that he was not always to be held in a state of uncertainty, and therefore declared the bargain atan end —that is, after a fraud, or an express refusal to complete the title. But the plaintiff did not take that course ; nor was he bound to do so. For, he might wish to hold the land, and he is entitled to have it made good to him, at least as far as his pu'rchase money will go towards effecting it: since the one party, as much as the other, has the right to make good the contract by completing the title. Here, instead of availing himself of the power to annul the contract after the defendant’s refusal to buy John
 
 *450
 
 Cooper's outstanding legal title, the plaintiff, without further communication with the defendant, took a deed from Cooper to himself, and then filed this bill, asking peremptorily, in the first place, to have his first contract rescinded. But he cannot get that: for he has now a tille to the thing, which he bought from the defendant. Then the equity between the parties, now,seems to be as easily-understood, as that which before existed. It is, that the plaintiff shall be reimbursed by' the defendant what it cost him to get the legal title. At least, that is the utmost he can claim. For, being in possession under the defendant, he may by that means have made his last purchase the easier and upon better terms: and therefore his first vendor has a right to participate in the benefits derived therefrom. The parties stand in such a relation, that while the plaintiff held to his possession and deed, obtained from the defendant, he could not appropriate to himself exclusively any benefits derived from dealing for the land. The plaintiff was not obliged to buy from Cooper, but, without first being off with Gray', he could not so bargain with another as to secure to himself an election to rescind, and leave none to the other parly.— If, then, the plaintiff had got the deed from Cooper for nothing, he would have no right to disturb his bargain with the defendant; or, il he paid a price, he could only ask for an abatement
 
 pro tanto
 
 out of the purchase money. He says, he paid $105, but that is denied and not proved, and therefore an enquiry must be directed on that point. If it should turn out that he did pay or oblige himself to pay that sum, it will not be a case of abatement, but of consumption of the purchase money, and the plaintiff would be entitled to a perpetual injunction ; that is to say, provided he gave no more for the conveyancefrom John Cooper than it was worth. For, although the legal title of Gray' was defective for the want of a formal deed from the patentee, yet the defendant alleges,
 
 *451
 
 that in fact'that person sold to Jesse Cooper or in some way authorized him to make sale of the land, and to that end put into his hands the grant and the other papers, and that the paper may at least be regarded as a binding contract, if not a deed, and those papers had been com: municated to the plaintiff before he made his bargain with John Cooper. Therefore the defendant urges that the plaintiff bought at the risk of taking from Cooper a title, not worth the buying. Now, it might be that the defendant declined purchasing from Cooper, because he considered that he already had his title in equity, and could compel him to convey. That would have been a justifiable ground for refusing, as he might have believed, that Cooper would not sue for the land and expose himself to the costs of a suit in equity In that state of things the plaintiff assumed too much in taking on himself to determine, that Cooper’s title was good, and, so, purchase it with the view of charging the defendant, absolutely, with -what he might think proper to give for it. The plaintiff is not entitled, then, to what he paid or agreed to pay Cooper: but only to as much as Cooper’s title, legal or equitable, such as it was in reality, was truly worth, or, rather, what it would have cost the defendant to get it in. The plaintiff can justly claim as much only as he saved the defendant by dealing for the land. For the purchaser has no right to constitute himself the agent of the vendor, so as to bind him absolutely for whatever he may choose to give for an outstanding claim, whether ■good or bad. The purchaser buys in such a claim at the risk of losing, because the title is good for nothing, or because it was a naked legal title and could have been obtained at less expense by legal proceedings. Then, the rights of these parties depend upon the enquiries of fact, whether John Cooper did or did not contract with Jesse Cooper for value, so as to bind him to convey the premises to the latter in fee, or in any sufficient manner atj.
 
 *452
 
 'thorize Jesse Coopor to contract for the sale thereof on his behalf; and, if so, what it would reasonably have cost the defendant or the plaintiff to have compelled John ■Cooper to make a proper conveyance of the premises ; or, if there was no such contract, or authority on the part of John Cooper, what the title conveyed by him to the plaintiff was worth at the time of conveyance, and whether the plaintiff paid or agreed to pay for the same : and it must be referred to the master to have those enquiries •made.
 

 Per Curiam.
 

 Decreed accordingly.