Nash, J.
 

 The bill charged, that the plaintiff, Alexander, purchased from W. H. Woods, who professed to act as the agent of the defendants, the patent right of a machine, called a straw-cutter., for eleven counties in the State of Tennessee, and two counties in the State of Mississippi, at the price of five hundred dollars, for which he gave his bond, payable twelve months thereafter, with the other plaintiff, Neil, as his surety. This contract was made in December, 1845, at which time his bond bears date. ' The plaintiffs aver, that the purchase was made expressly uppn' the condition, that the defendants should immediately forward to Alexander, in Lincoln county, where he resided, a duly and properly-authenticated copy of the power of at
 
 *243
 
 torney to the said W. H. Woods. The bill further states, that in the spring or summer of 1846, the plaintiff, Alexander, received from Utley, the defendant, while in Tennessee, a letter, ratifying and confirming the sale made by Woods, but no authenticated power-of attorney, nor has he ever received one from him ; and that,, upon getting to Tennessee, he found he could not make sales without such proof of his title, and, therefore, made none ; and that he had not received one cent upon his said purchase; That, at December Term, 1848, of Orange Superior Court, the defendants obtained a judgment against the present plaintiffs, upon their said bond, and have issued upon it añ execution; and prays an injuction to restrain the collection of the money. The bill was filed the 23d of April, 184S.
 

 The defendants admit, that W. H. Woods was not their agent to sell for them rights, under their patent, for the State of Tennessee. But, upon receiving from the plaintiff1, Alexander, his letter, stating his purchase, they immediately, by letter, ratified and confirmed it. They aver, that they knew nothing about the terms of the sale, except from the statements contained in the plaintiff s bill. They further state, that in 1847, they received a letter from Alexander, dated in January of that year, stating, among other things, that he had sold rights for one county, at $75, and the half of three more, for $160; that, in consequence of the want of the power of attorney to Woods, he found he could do nothing with the patent, and proposing to give up the patent to the defendants, and the sales that he had made, and that they should give up his bond. They state further, that the plaintiffs ought, immediately upon finding they could make no sales, to have given up the contract, and notified them of the fact; and that, after using it twelve months and more, they came too late, as by their delay, they have prevented them from making sales, and thereby inflicted a serious injury upon them. But they are ready and willing to execute the contract in any way it may be decreed.
 

 
 *244
 
 ' On the coming in of the answer, a motion was made by one of the defendants, to dissolve the injunction, which, upon argument, was refused; and the injunction continued to the hearings whereupon an appeal was taken by the defendants to the Supreme Court.
 

 The structure of'this bill is a singular one. The plaintiffs ask no relief beyond that of enjoining the collection of the money, due upon their bond. They admit, that the patent claimed by the defendants, is a valid one, and that the machine patented is valuable; but they ask, that the defendants shall not be permitted to collect their money, because they have not complied with the condition upon which the sale was made. ; They do
 
 not ask to compel the
 
 defendants to comply with their contract, or that it may be rescinded. In other words, they ask the Court to give them the full benefit of the contract, and deny any of its fruits to the defendants. Such, we say, is the necessary construction to be placed on the bill in its present form. It would not be fair or equitable to suffer the plaintiffs to retain the contract, so far as it is beneficial to them, and, in effect, to rescind it, as far as it is beneficial to the defendants. But, again, by the contract made with Woods, the plaintiffs purchased the patent-right for two counties in Mississippi. Of this part ■ of the contract, they state in their bill, they do not complain. The purchase of these two counties was a part of the consideration of the bond, the collection of the money secured by which, they seek to enjoin perpetually. We are to presume, that this portion of the contract they 'are willing to retain, and, it appears, without paying anything for it. Why they are willing to retain that portion of the purchase, and not that part relative to Tennessee— they having no duly authenticated copy of the power of attorney to sell there, more than in Tennessee — we cannot perceive, nor does this bill inform us. There is another, and still more fatal, objection to the relief the plaintiffs seek.' They were too long in making up their minds to the course
 
 *245
 
 they intended to pursue. The bill was filed in April, 1647,- and not until they were sued for the money. The contract, was made in December, 1845.- In May or June, 1846, Alexander discovered, as he charges, that, without the authenticated copy of the power of attorney, he could not succeed in making sales successfully, in Tennessee. He had before that written to the defendant, Utley, to forward him such a copy; instead of which, he at that time received the letter of the latter, admitting, in substance, that Woods had no power to sell rights in that State; and that, consequently, there was no power of attorney to authenticate; but he ratified and confirmed the contract made by him. The plaintiffs ought, then, to have notified the defendants, that they would not go on with the bargain. In January, 1847, the letter was written by the plaintiff, Alexander, to Utley, in which he proposes to arrange their difficulties in the way therein suggested; but he does not then repudiate the contract. Twelve months elapse after the sale, before the defendants are apprised by the plaintiffs, that they have .experienced any difficulty in sales, for the want of the powr er of attorney — during which time contracts of sales were made by the plaintiffs ; and during the whole of which time, the defendants were kept out of the use of their patent in that region of country; and, consequently, sustained an injury to that extent. In the case of
 
 Parsons
 
 v
 
 Conolly,
 
 reported in a note to the 3d vol. of Vesey, jr., 625, the Chancellor, commenting on the doctrine of puffing at sales by auction, observes, the doctrine “ goes no further in point of authority, than where the purchaser declares off immediately” — that is, as soon as he discovers the fraud. This principle is affirmed-in the case of
 
 McDowell and McKesson
 
 v
 
 Sims and others,
 
 decided by this Court, at August Term 1849, 6 Ire. Eq. 278. This course the plaintiffs did not pursue ; and they must bear the consequences.
 

 There was error in the interlocutory order, continuing .the injunction to the hearing. The decree is reversed, aqd
 
 *246
 
 the injunction dissolved This opinion will be certified to the Court of Equity for Union county.
 

 The plaintiffs must pay the costs of this Court.
 

 Per CmuAJvn Ordered accordingly.