W. C. VAN GILDER v. W. H. BULLEN.

(Filed 28 May, 1912.)

1. **Deeds and Conveyances—Contracts—Equity—Fraud—Rescission —Unreasonable Delay.**

    Upon the principle that a party seeking to rescind a contract for fraud in its procurement must promptly act upon the discovery of the fraud, it is held that equity will not afford relief to a purchaser of lands in his action to rescind his deed for fraud when he has waited for two years without indicating his purpose to do so.

2. **Same—Acquiescence.**

    A purchaser of lands seeking equitable relief upon the ground that the sale had been procured by the fraudulent misrepresentation of the vendor that he owned the fee, whereas he only owned a life estate therein, by acquiring the remainder indicates that he intended to perfect his title and abide by his contract.

3. **Deeds and Conveyances—Contracts—Equity—Rescission—Unreasonable Delay—Damages—Actions at Law.**

    A purchaser of lands, having lost his right to have his deed rescinded for fraud because of his vendor's misrepresenting that he was the owner of the fee when he only had a life estate therein, subsequently acquired the remainder: *Held*, his measure of damages under the facts of this case is the amount paid by him to make his title in fee, as it was represented to him to be.

4. **Same—Vendor and Vendee—Covenants.**

    One claiming under a deed wherein it is stipulated that the original vendee agrees to pay a certain mortgage indebtedness on the lands conveyed, as a part of the consideration, is bound by the terms of the deed to pay this indebtedness, and a personal judgment may be rendered against him for it.

5. Deeds and Conveyances—Contracts—Mortgages—Life Estates—Acquisition of Fee—Feeding Estoppel—Decree of Foreclosure—Equity.

A purchaser who acquired only a life estate in lands under a deed purporting to convey the fee, wherein there was a provision under which he assumed a certain existing mortgage indebtedness against the land, afterwards acquired by purchase the remainder in fee. In proceeding to foreclose the mortgage, after the death of the life tenant: *Held*, (1) the life estate, having fallen in, was not subject to foreclosure sale; (2) the purchaser had the right to perfect his title by acquiring the remainder by purchase; and (3) the doctrine of feeding an estoppel does not apply to the subsequent acquisition of the remainder, so as to subject it to an order of sale or a decree of foreclosure.

6. Deeds and Conveyances—Title—Common Source—Superior Title—Equity—Estates—Remainders.

The doctrine that when both parties to a controversy are claiming under a common source of title to the lands in dispute they may not deny the title of the person under whom they both claim, does not prevent one of them from showing that he has acquired a better title, as, in this case, that the common source held only a life estate, which had fallen in, and that he is entitled to possession under a deed from the remainderman.

APPEAL from *Whedbee, J.,* at February Term, 1912, of UNION.

Thomas S. Hemby, being the owner of the land hereinafter referred to, situate in Union County, died leaving a will of date 23 April, 1883, in which he devised said land to W. S. Hemby for life, and after his death to his children, if he left any, and if not, to D. J. Hemby.

On 23 October, 1903, the said W. S. Hemby conveyed said land to M. L. Dunlap, of the city of Chicago, by mortgage deed, to secure a note for $2,000, payable to said Dunlap, which mortgage deed purported to be in fee, but contained no covenants.

On the same day, 23 October, 1903, the said W. S. Hemby executed a deed to the defendant Bullen, purporting to convey said land in fee, subject to said mortgage, and with general covenants.

The last mentioned deed contained the following agreement: "Subject to an encumbrance of $2,000, which the grantee assumes and agrees to pay as part of the purchase money; and subject also to the taxes of 1903 and thereafter," and was executed in consideration of the conveyance by the said Bullen to said Hemby of certain real property in Chicago, subject to a mortgage of $4,000 thereon.

On 24 October, 1903, the said M. L. Dunlap executed a deed to the plaintiff, W. C. Van Gilder, by which he transferred to him said note for $2,000, and the mortgage securing the same, and conveyed his interest in said land.

The property in Chicago, conveyed to W. S. Hemby by the defendant, was sold under the mortgage, which was an encumbrance thereon at the time of the conveyance, and the said Hemby never realized anything therefrom.

. W. S. Hemby is dead, but the date of his death is not given, and the defendant has acquired the interest of D. J. Hemby in said land, for which he paid $11, and the plaintiff and the defendant agree that the defendant owns the remainder interest in the land.

This action is brought by W. C. Van Gilder against the said Bullen to foreclose the mortgage executed by W. S. Hemby, and the defendant entered a general appearance.

In his answer the defendant admits that he promised to pay said note of $2,000 secured by said mortgage, but he alleges that he was induced to enter into the contract with the said W. S. Hemby by reason of a conspiracy between said Hemby and the plaintiff to defraud him, and upon the representation that the said Hemby had title in fee to said land, which representation both the plaintiff and Hemby knew to be false.

The defendant knew nearly two years before this action was commenced that W. S. Hemby had only a life estate at the time of his conveyance, and he at no time tendered a reconveyance, nor did he demand that the Chicago property be reconveyed to him, nor do any act showing that he elected to rescind the contract.

The defendant offered evidence tending to establish his allegations of fraud, but his Honor held on the admitted facts, as-

suming fraud to be established, that the defendant had lost his right to .rescission by delay; that his remedy was to recover damages upon the false representation; that the measure of his .damages was the amount he paid for the remainder interest; that the plaintiff could not recover a personal judgment against the defendant, but was entitled to have the land sold to pay his debt. Judgment was rendered accordingly, and the defendant excepted and appealed.

*Adams, Armfield & Adams, Lemmond & Vann, and A. M. Stack for plaintiff.*

*Williams, Love & McNeely and Redwine & Sikes for defendant.*

ALLEN, J., after stating the facts: The rulings of his Honor are upon the ground that the plaintiff is entitled to the judgment rendered, although the defendant may establish his contention that a fraud was practiced upon him and that the plaintiff was a party to it, and we must consider the case and determine the rights of the parties as if these facts were proven.

Assuming, then, for the purposes of the appeal, that the plaintiff and W. S. Hemby conspired to defraud the defendant, that pursuant to this conspiracy they represented to him that Hemby was the owner in fee of the land conveyed to the defendant, that this representation was false, and that it was an inducement to the contract, is the plaintiff entitled to any relief, and if so, to what relief?

The answer to the question depends upon the conduct of the defendant after the discovery of the fraud, as shown by the admitted facts.

As stated in Clark on Contracts, p. 234: "Fraud does not render the contract void, but renders it only voidable at the option of the party defrauded. In other words, it is valid until rescinded. It is for the party defrauded to elect whether he will be bound. He therefore has several remedies on discovering the fraud. First. He may affirm the contract, and bring an action for deceit to recover such damages as the fraud has occasioned him, or set up such damages by way of recoupment or counterclaim, if sued upon the contract by the other party.

.  ..  .   Second.   He may rescind the contract, and (1) sue
in an action of deceit, for any damages he may have sustained
by reason of the fraud; (2) if he has paid money under the
contract, he may recover it back; or (3) he may resist an action
at law brought against him on the contract; or (4) he may
resist a suit in equity by the other party for specific perform-
ance; or (5) he may himself sue in equity to have the contract
judicially canceled and set aside."

It is also well established that the right to rescind must be
exercised promptly, and if there is unreasonable delay, the right
is lost, and the party defrauded is generally relegated to his
action for damages.   *Alexander v. Utley,* 42 N. C., 242; *Knight
v. Houghtalling,* 85 N. C., 17.

In the first of these cases a delay of twelve months was held
to be fatal to the right, and in the second, *Ruffin, J.,* speaking
for the Court, says: "A party is not bound to abandon a con-
tract brought about by fraud and imposition upon him, but he
may, if he sees proper, adhere to the contract, and seek his
compensation for the fraud in an action at law for damages.
.  ·  .   .   The law allows the purchaser in such a case to either
abandon the contract absolutely or else abide by it and sue at
law for the deceit, and the only requirement it puts upon him
is to make and declare his election the moment the knowledge
of the fraud is attained by him.   .   .   .   The rule of law is,
that he who would rescind a contract to which he has become a
party must offer to do so promptly on discovering the facts
that will justify a rescission, and while he is able of himself, or
with the aid of the court, to place the opposite party substan-
tially in *statu quo;* he must not only act promptly upon the first
discovery of the fraud, if fraud be the cause assigned for the
rescission asked, but he must·act *decidedly,* so that his vendor
may certainly know his purpose, and thereby have the oppor-
tunity afforded him to assent to the rescission, resume the prop-
erty, and look out for another purchaser.   In no case is he·
permitted to rescind when he has continued to treat with his
vendor upon the basis of the contract after his discovery of the
fraud practiced upon him, and neither is it allowed him to
rescind in part and to affirm in part; but if done at all it must

be done *in toto.* This rule is founded on the plainest principles of justice, and has been universally recognized."

Applying these principles·to the facts, we must hold that the defendant has no right to a rescission of the contract, as there was a delay of about two years, after the discovery of the alleged fraud, before this action was commenced, during which time the defendant retained the deed procured by the contract. and did no act indicating a purpose to rescind. On the contrary, his purchase of the title of the remainderman would suggest that he intended to perfect his title and abide by the contract.

The defendant, having lost his right to a rescission of the contract, was entitled to recover damages, and in our opinion the rule adopted by his Honor, limiting the recovery of damages to the amount paid out by the defendant to make his title as it was represented to be, was correct. Bigelow on Estoppel, 357; *Westall v. Austin,* 40 N. C., 1; *Kindley v. Gray,* 41 N. C., 445; ·*Ramsour v. Shuler,* 55 N. C., 487; *Bank v. Glenn,* 68 N. C., 35.

In *Kindley v. Gray, supra,* the Court says: "Instead of availing himself of the power to annul the contract, the plaintiff took a deed from Cooper (who held the outstanding legal title against him), and then filed this bill, asking peremptorily in the first place to have the contract rescinded. But he cannot get that, for he has now a title to the thing he bought from the defendant. The plaintiff shall be reimbursed by the defendant what it cost him to get the legal title. That is the utmost he can claim."

We do not, however, approve the judgment rendered. The defendant entered a voluntary appearance in the action, and he has accepted a deed in which it is stipulated that he agrees to pay the mortgage debt as a part of the consideration. This agreement, if not in writing, would not come within the statute of frauds. (*Peele v. Powell,* 156 N. C., 553), and one who claims the benefit of a deed must assume its burdens. *Drake v. Howell,* 133 N. C., 166. We see no reason, therefore, for denying the plaintiff a personal judgment against the defendant.

We are further of opinion that the plaintiff is not entitled to an order of sale or a decree of foreclosure.

At the time W. S. Hemby executed the mortgage to Dunlap, which the plaintiff now owns, he had only a life estate in the land, and the only security for the debt was the conveyance of that estate. No decree can be rendered that will operate on the life estate, because Hemby is dead, and the remainder interest cannot be subjected to the payment of the debt, as it was not conveyed by the mortgage, unless because this interest was afterwards purchased by the defendant, and we do not think the purchase by the defendant has this effect. The doctrine of feeding an estoppel by the acquisition of an interest or estate after the execution of a deed does not apply, because the defendant executed no deed for this land to the plaintiff, nor to any one under whom he claims, nor does the fact that both parties claim under W. S. Hemby prevent the defendant from claiming the remainder.

As stated in *McCoy v. Lumber Co.,* 149 N. C., 1, and approved in *Sample v. Lumber Co.,* 150 N. C., 161, and in *Bryan v. Hodges,* 151 N. C., 414, the rule, enforced in the trial of title to land, that when both parties claim title under the same person, it is not competent for either to deny the title of such person, "is not in strictness an application of the doctrine of estoppel, but is a rule established for the convenience of parties in actions of this character, relieving them of the necessity of going back further than the common source when it is apparent that both parties are acting in recognition of this common source as the true title," and is never permitted to prevent one from showing that he has acquired a better title. *Love v. Gates,* 20 N. C., 363; *Copeland v. Sauls,* 46 N. C., 73; *Forbes v. Hunter,* 46 N. C., 231; *Ray v. Gardner,* 82 N. C., 146.

Practically the same doctrine is announced, in different language, and the reasons for it given by *Chief Justice Marshall,* in *Bright v. Rochester,* 7 Wheat., 540. He says: "It is contended that he is so restrained because John Dunlap sold to Hunter, and Hunter has conveyed to the present defendant. It is very certain that these sales do not create a legal estoppel. The defendant has executed no deed to prevent him from aver-

ring and proving the truth of the case. If he is bound in law to admit a title which has no existence in reality, it is not on the doctrine of estoppel that he is bound. It is because, by receiving a conveyance of a title which is deduced from Dunlap, the moral policy of the law will not permit him to contest that title. This principle originates in the relation between lessor and lessee, and so far as respects them is well established, and ought to be maintained. The title of the lessee is, in fact, the title of the lessor. He comes in by virtue of it, and rests upon it to maintain and justify his possession. . . . The propriety of applying the doctrine between lessor and lessee to a vendor and vendee may well be doubted. The vendee acquires the property for himself, and his faith is not pledged to maintain the title of the vendor. The rights of the vendor are intended to be extinguished by the sale and he has no continuing interest in the maintenance of his title, unless he should be called upon in consequence of some covenant or warranty in his deed. The property having become, by the sale, the property of the vendee, he has a right to fortify that title by the purchase of any other which may protect him in the quiet enjoyment of the premises. No principle of morality restrains him from doing this, nor is either the letter or the spirit of the contract violated by it. The only controversy which ought to arise between him and the vendor respects the payment of the purchase money. How far he may be bound to this by law, or by the obligations of good faith, is a question depending on all the circumstances of the case; and in deciding it, all those circumstances are examinable."

The following authorities sustain the same view: *Merryman v. Brown,* 76 U. S., 592; *Ousterhout, v. Shoemaker,* 3 Hill, 518; *Sands v. Davis,* 40 Mich., 18; *Averill v. Wilson,* 4 Barb., 185; *Mattison v. Ausmuss,* 50 Mo., 553.

For the reasons given, and because there is no agreed statement of facts upon which a judgment might be entered, there must be a new trial.

New trial.