IRENE GREEN WILLIAMSON, Sometimes Called MARY WILLIAMSON,
    Widow of HENRY W. WILLIAMSON, Deceased, et al., v. ELLEN W.
    COX and Husband, DAVE COX.

(Filed 25 September, 1940.)

**1. Wills § 31—Cardinal rule in interpretation of will is to effectuate
intent of testator.**

The cardinal principle in the interpretation of wills is that the inten-
tion of the testator as expressed in the language of the instrument shall
prevail, and that the application of technical rules will not be permitted
to defeat an intention which substantially appears from the entire instru-
ment, although accepted canons of construction which have become settled
rules of law and property cannot be disregarded.

**2. Wills § 33b—**

A devise to testator's son "to have and to hold to him and his bodily
heirs born in wedlock, if any, if no such heirs then to go back to his
nearest of kin," *is held* to disclose that the words "bodily heirs" were not
used in their technical sense as heirs general, but were used in the sense
of children or issue, and the rule in *Shelley's case* does not apply.

**3. Wills § 33c—**

Under the statute of uses, a fee simple may be limited after a fee simple
by executory devise under the doctrine of springing or shifting uses, but
in order for this doctrine to apply it is necessary that there be a super-
vening contingency to limit or cut down the first estate and make room
for the limitation over.

**4. Same—**

Where a contingent limitation over is made to depend upon the death
of the first taker without children or issue, the limitation takes effect
when the first taker dies without issue or children living at the time of
his death. C. S., 1737.

**5. Same—First taker held to take determinable fee with limitation over to his next of kin upon his death without issue.**

A devise to testator's son "to have and to hold to him and his bodily heirs born in wedlock, if any, if no such heirs then to go back to his nearest of kin," *is held* to devise a determinable fee to the first taker upon the supervening contingency of his death without children or issue him surviving, it being apparent that the words "bodily heirs" were not used in their technical sense, but meant issue or children, C. S., 1739, and upon the death of the first taker without issue him surviving, his surviving sister takes as his next of kin to the exclusion of his nephews and nieces, children of deceased brothers and sisters.

APPEAL by plaintiffs from *Nimocks, J.,* at June Term, 1940, of WILSON. Affirmed.

*Luke Lamb for plaintiffs, appellants.*
*A. O. Dickens and Connor & Connor for defendants, appellees.*

DEVIN, J. This case involves the construction of the following clause in the will of Patrick Williamson:

"I give and bequeath to my son, Henry Singler Williamson, all the balance of my land, to have and to hold to him and his bodily heirs born in wedlock, if any, if no such heirs, then to go back to his nearest of blood kin."

Henry Singler Williamson died without issue, leaving surviving his widow and several nieces and nephews, children of deceased brothers and sisters, who are the plaintiffs in this action, and one surviving sister, Ellen W. Cox, the defendant.

The plaintiffs contend that under the will Henry Singler Williamson took a fee simple, and that hence the land descended to his heirs general, subject to the dower right of the widow. They base their contention upon several grounds: (1) That the first portion of the will devised an estate in fee simple, and that a limitation over was void; (2) that the first taker was presumably the favorite of the testator, and that language of doubtful meaning should be construed in favor of the early vesting of the estate; (3) that the limitation over is made to depend upon no supervening contingency, the happening of which would defeat the prior estate; (4) that if the phrase "bodily heirs" be construed children, then Henry Singler Williamson having no children, the devise conveyed an estate tail which the statute (C. S., 1734) would convert into a fee simple.

On the other hand, the defendants contend that by the use of the words "heirs of the body born in wedlock," taken in connection with the entire language in which the devise was expressed, there was manifest the intention on the part of the testator that these words be understood to

mean lawful issue or children; that by this expression in connection with the following words, "if any, if no such heirs, then to go back to his nearest of blood kin," there was constituted a contingency upon which the limitation over was to depend; that Henry Singler Williamson took only a determinable fee under the will; and that upon his death without bodily heirs born in wedlock, the land passed to his nearest of blood kin, his surviving sister, Ellen W. Cox.

The cardinal principle in the interpretation of wills is that the intention of the testator as expressed in the language of the instrument shall prevail, and that the application of technical rules will not be permitted to defeat an intention which substantially appears from the entire instrument. *Heyer v. Bulluck,* 210 N. C., 321, 186 S. E., 356; *Smith v. Mears, post,* 193. However, accepted canons of construction which have become settled rules of law and of property cannot be disregarded. As was said in *May v. Lewis,* 132 N. C., 115, 43 S. E., 550: "It is our duty, as far as possible, to give the words used by a testator their legal significance, unless it is apparent from the will itself that they were used in some other sense." 4 Kent's Com., 231.

It may be noted at the outset that the rule in *Shelley's case* has no application here. *Daniel v. Bass,* 193 N. C., 294, 136 S. E., 733; *Wallace v. Wallace,* 181 N. C., 158, 106 S. E., 657; *May v. Lewis, supra.* The language of the devise does not present a case which would require the application of that rule of ancient origin and continuing vitality which *Justice Douglas* in *Stamper v. Stamper,* 121 N. C., 251, wittily dubbed "the Don Quixote of the law."

If the testator had used the words "to Henry Singler Williamson and his bodily heirs," and no more, undoubtedly a fee simple would have been conveyed. Did the subsequent words, "if any, if no such heirs, then to go back to his nearest of blood kin," defeat that estate upon his death without bodily heirs born in wedlock, and serve to pass the fee to his nearest of blood kin? At common law a fee simple could not be limited after a fee simple. But after the statute of uses (27 Henry VIII), it was held that the estate created by a deed operating under the statute might be made to commence *in futuro* without immediate transmutation of possession, and that by such conveyances inheritances might be made to shift from one to another upon a supervening contingency, and thence arose the doctrine of springing and shifting uses or conditional limitations. As stated by *Ashe, J.,* in *Smith v. Brisson,* 90 N. C., 284, "It was under the doctrine of a shifting use that it has been held since early after the statute of uses that a fee simple may be limited after a fee simple either by deed or will; if by deed, it is a conditional limitation; if by will, it is an executory devise. 'And in both cases a fee may be limited after a fee.' 2 Blk., 235." By the Act of 1827, now C. S., 1737,

it was provided that: "Every contingent limitation in any deed or will, made to depend upon the dying of any person without heir or heirs of the body, or without issue or issues of the body, or without children, . . . shall be held and interpreted a limitation to take effect when such person dies not having such heir, or issue, or child . . . living at the time of his death."

In *Massengill v. Abell,* 192 N. C., 240, 134 S. E., 641, this Court construed a will wherein the testator devised land to "Nathan A. Massengill and his heirs, and if no heirs at his death, to return to his nearest relations." It was there held, *Adams, J.,* speaking for the Court, that if Nathan A. Massengill should die leaving no issue at his death the limitation over would take effect, the ulterior limitation "if no heirs at his death" becoming effective. The Court said, "He (the testator) limited a fee upon a fee by cutting down the first in order to make room for the second. *Carroll v. Herring,* 180 N. C., 369, 104 S. E., 892. The principle is familiar. A devise to A and his heirs, to be void if A have no child living at his death, leaves the devisor some interest which he may give to a third person, and in the disposition of such interest under the doctrine of springing and shifting uses a fee may be limited after a fee (*Willis v. Trust Co.,* 183 N. C., 267, 111 S. E., 163; *McDaniel v. McDaniel,* 58 N. C., 351), and the ulterior limitation will become effective upon the death of the first taker."

It was also said in this well considered case of *Massengill v. Abell, supra:* "A limitation to the heirs of a living person, if no contrary intentions appear in the deed or will, will be construed to be to the children of such person. C. S., 1739. But this is not a limitation to the heirs of a living person, but a limitation over if there be no heirs at the death of the first taker, and the word 'heirs' in this phrase means 'issue.'" It was accordingly held that the limitation over would become effective if the first taker had no issue living at his death.

In *Hudson v. Hudson,* 208 N. C., 338, 180 S. E., 579, the testator devised land to his daughter "to be hers and her heirs, if any, and if no heirs to be equally divided with other children." It was held this did not convey an indefeasible fee.

In *Puckett v. Morgan,* 158 N. C., 344, 74 S. E., 15, the devise of land was to "M during her life, then to her bodily heirs, if any, but if she have none, back to her brothers and sisters." The Court held the words "bodily heirs, if any," coupled with an ulterior limitation to her brothers and sisters, showed that the words "bodily heirs" (equivalent to heirs of the body) were not used in their technical sense but meant children or issue. And in *Jones v. Whichard,* 163 N. C., 241, 79 S. E., 503, where the conveyance was to R and M for life, "and then to their legal bodily heirs provided they have any and if not to be equally divided among nearest kin," the same result was reached.

In *Hampton v. Griggs,* 184 N. C.; 13, 113 S. E., 501, the present Chief Justice pointed out that, in determining whether the testator used the words "lawful heirs of my son" in their technical sense, the ordinary principles of construction should be applied in order to ascertain the intent of the testator. It was held in that case that these words were used in the sense of issue or children. The same view was expressed by *Hoke, J.,* in *Pugh v. Allen,* 179 N. C., 307, 102 S. E., 394, and similar rulings of this Court in *Francks v. Whitaker,* 116 N. C., 518, 21 S. E., 175; *Rollins v. Keel,* 115 N. C., 68, 20 S. E., 209; and *Sain v. Baker,* 128 N. C., 256, 38 S. E., 858, were cited.

In *Reid v. Neal,* 182 N. C., 192, 108 S. E., 769, the testator devised land to his daughter, "to her during her natural life, and at her death I give it to her bodily heirs, if any, and if none, to return to my estate." After reviewing a number of decided cases, *Adams, J.,* uses this language: "After a careful consideration of the authorities we conclude that effect must be given the ulterior limitation, 'and if none, to return to my estate'; that the testator gave to his daughter a life estate with remainder in fee defeasible upon failure of 'bodily heirs,' " these words being construed to mean issue.

In *Wallace v. Wallace, supra,* the Court construed a deed conveying land to C. A. Wallace for life, and after his death "to his bodily heirs in fee simple, if any, and if none, to go to his next of kin." It was held the words "bodily heirs" were used in the sense of children or issue, and that the estate conveyed was to C. A. Wallace for life, remainder to his issue, and upon failure of issue over to his next of kin, the term next of kin being synonymous with nearest of kin.

In *Smith v. Brisson,* 90 N. C., 284, the conveyance was "to Rowland Mercer and the heirs of his body, and if said Rowland Mercer should have no heirs, the said land shall go to the heirs of my son, James A. Mercer." The deed was construed as if it read "to Rowland Mercer and the heirs of his body, and if Rowland Mercer should die not having such heirs living at his death, the land shall go to the children of James A. Mercer." It was accordingly held that the deed conveyed only a determinable fee to Rowland Mercer, which terminated by his death without children and vested an absolute fee simple by the limitation in the deed in the children of James A. Mercer.

In *McDaniel v. McDaniel,* 58 N. C., 351, where the devise was to L and his heirs; provided, should L die leaving no lawful heir or issue surviving him, the land to be divided among testator's surviving sons, it was held the restriction operated as a condition to cut down the estate so that L took not a fee simple but a fee determinable upon his death without issue him surviving.

In the case of *Harrell v. Hogan,* 147 N. C., 111, 60 S. E., 909, where

the devise was to four daughters: "if either or all of the above girls die without leaving a lawful heir," the land to go to testator's sons, it was held the estates devised to the daughters were determinable as to each devisee on her dying without leaving a lawful heir. It was said by the Court: "The event by which the interest of each is to be determined must be referred  .  .  .  to the death of the several takers of the estate in remainder without leaving a lawful heir."

Plaintiffs contend that the devise in the instant case should be construed in accord with the principle held to be controlling in *Daniel v. Bass,* 193 N. C., 294, 136 S. E., 733, and *Boyd v. Campbell,* 192 N. C., 398, 135 S. E., 121.

In *Daniel v. Bass, supra,* the testator devised land "to my sisters, Nancy Daniel and Mehala Daniel,  .  .  .  to them and their heirs forever, if any. If not, to the heirs of my sisters, Mary Jane Hathaway, Celia Bass and Sallie Powe, to them and their assigns forever." It was held by this Court that in the expression "to them and their heirs forever," the word "heirs" must be given its technical meaning, and that an estate in fee simple was thereby devised to the first takers, and that the additional words "if any" did not change the quantity of the estate. The Court said: "There can be no limitation of a fee after a fee unless there be some contingency which defeats the estate of the first taker. The prior estate may be a fee defeasible or determinable by the contingency on which it is limited; but such supervening contingency is essential, and it must operate to defeat, abridge or cut down the prior estate in order to make room for the limitation. In the will under consideration we discover no such contingency. There is no limitation over in the event of the first takers' death without children or issue; and herein, if in no other respect, the devise differs from that in *Massengill v. Abell,* 192 N. C., 240."

The distinction is apparent when it is noted that in the case at bar the devise is "to Henry Singler Williamson and his bodily heirs born in wedlock, if any, if no such heirs, then to go back to his nearest of blood kin."

In *Boyd v. Campbell,* 192 N. C., 398, 135 S. E., 121, it was decided that a deed "to Pleas Clodfeler, his children, their heirs, and then to his grandchildren forever" carried the fee to the first taker. Pleas Clodfeler having no children when the deed was executed, he took an estate tail, which, under C. S., 1734, was converted into a fee simple. There was no supervening contingency to give efficacy to the doctrine of shifting uses and to convey a fee after a fee by way of conditional limitation. Here there was the contingency that Henry Singler Williamson have "no such heirs," that is, "bodily heirs born in wedlock," failing which the land passed by the terms of the will to his next of kin.

In *Westfeldt v. Reynolds,* 191 N. C., 802, 133 S. E., 168, a devise of one-half of the property to Lulie Westfeldt, "and should Lulie Westfeldt die without heirs the property to go over to Overton Westfeldt Price's children," was, under the particular circumstances of the parties in that case, held to convey a fee simple. And in *Cooper, Ex Parte,* 136 N. C., 130, 48 S. E., 581, a devise to Arch Cooper "and if Arch Cooper ever marries and has a lawful heir they have the land," was held to convey a fee simple to the first taker. "We must regard the words 'if Arch Cooper ever marries' as surplusage," said the Court.

The decisions upon the particular facts of those cases may not be held controlling in the construction of the language used in the devise under consideration in this case.

It will be noted that in the first clause the testator here devised the land to Henry Singler Williamson "and his bodily heirs born in wedlock." This expression is similar to that construed in *Blackledge v. Simmons,* 180 N. C., 535, 105 S. E., 202, where the language used was "heirs of the body lawfully begotten." There it was stated that in order to invoke the rule constituting a fee simple the inheritance must be limited to heirs as heirs of the first taker, as an entire class of persons and not merely individuals embraced within that class; and that "heirs of the body lawfully begotten" would be understood to mean begotten in lawful wedlock. This, it was held, would exclude illegitimate children who, under certain circumstances, and by virtue of C. S., 277, and C. S., 279, might, in a restricted way, become heirs.

While the expression "bodily heirs" is equivalent to "heirs of the body," and the term heirs of the body ordinarily comes within the general definition of heirs in its technical significance *(Donnell v. Mateer,* 40 N. C., 6 [9]), the words heirs of the body, in numerous cases, in view of the context and the manifest intention of the devisor, have been held to mean children or issue. *Allen v. Pass,* 20 N. C., 207; *Thompson v. Mitchell,* 57 N. C., 441; *Pless v. Coble,* 58 N. C., 231; *Crawford v. Wearn,* 115 N. C., 540, 20 S. E., 724; *Francks v. Whitaker,* 116 N. C., 518, 21 S. E., 175; *Bird v. Gilliam,* 121 N. C., 326, 28 S. E., 489; *May v. Lewis, supra; Smith v. Lumber Co.,* 155 N. C., 389, 71 S. E., 445; *Swindell v. Smaw,* 156 N. C., 1, 72 S. E., 1; *Puckett v. Morgan,* 158 N. C., 344, 74 S. E., 15; *Blackledge v. Simmons,* 180 N. C., 535, 105 S. E., 202; *Moseley v. Knott,* 212 N. C., 651, 194 S. E., 100. By statute (C. S., 1739) it is required that "a limitation by deed, will, or other writing, to the heirs of a living person, shall be construed to be the children of such person, unless a contrary intention appear by the deed or will." This statute was construed by *Chief Justice Shepherd* in *Starnes v. Hill,* 112 N. C., 1, 16 S. E., 1011.

Upon the authorities herein cited, and others, containing expressions in deeds and wills similar to those used in the will under consideration, we conclude that the limitation over in the event Henry Singler Williamson should die without issue born in wedlock became effective upon his dying without such issue, and that by the terms of the will the land thereupon passed to his nearest of blood kin.

There is no serious question raised that on the death of Henry Singler Williamson without lawful issue, his nearest blood relation was his surviving sister, Ellen W. Cox, the defendant. *Knox v. Knox,* 208 N. C., 141, 179 S. E., 610; *Wallace v. Wallace,* 181 N. C., 158, 106 S. E., 501; *Miller v. Harding,* 167 N. C., 53, 83 S. E., 25; *Davenport v. Hassell,* 45 N. C., 29.

We think the trial judge has given the proper interpretation to the will of Patrick Williamson, and has correctly decided the questions presented in this case. The judgment of the court below is

Affirmed.