CRAFT v. MECHANICS' HOME ASSOCIATION.

(November 13, 1900.)

1. *Mortgages—Foreclosure Pending Partition—Tenants in Common.*

A tenant in common can not estop the mortgagee of his co-tenant from foreclosing by making such mortgagee a party to proceedings for partition.

2. *Mortgages—Sale—Redemption—Purchase by Mortgagee.*

A director of a corporation buying land sold under mortgage by the corporation, is presumed to have bought for the corporation, and acquires only the legal title, the mortgagor still holding the equity of redemption.

CIVIL ACTION by W. C. Craft against the Mechanics' Home Association, N. B. Rankin and W. B. McCoy, heard by Judge *George H. Brown, Jr.,* and a jury, at Spring Term, 1900, of

NEW HANOVER Superior Court. From judgment for plaintiff, against N. B. Rankin, the latter appealed.

*McNeill & Bryan,* for plaintiff.
*Junius Davis,* for defendant.

FURCHES, J. The plaintiff, Craft, was the owner of an undivided four-fifths interest in a lot in Wilmington, and his sister, Mrs. Mathis, was the owner of the other fifth of said lot. Plaintiff borrowed $900 of the defendant, to secure the payment of which he mortgaged to the defendant corporation his four-fifths interest in said lot. After the date of the mortgage of plaintiff to defendant, Mrs. Mathis commenced a proceeding in the Superior Court of New Hanover County before the Clerk for partition, in which she alleged that said lot could not be actually divided without great damage to the parties interested, and asked that a sale be ordered for that purpose. The plaintiff, Craft, and the defendant association were made parties defendant to this proceeding for sale and partition, and Mr. McKoy, as attorney, representing both the plaintiff, Craft, and the association, filed an answer, in which the defendant association asks that a sufficient amount arising from a sale of said property be set aside to pay the balance then due on its mortgage. Upon this petition a sale was ordered, a commissioner appointed, and a sale made, at which the lot brought something over $1,300. But a 10 per cent. bid being put on the amount the lot sold for at this sale, another sale was ordered, and at this second sale Dr. Dreher bid off the lot at $1,710, and deposited his check with the Clerk for that amount. But there were back taxes due for two years which were liens on said lot; and, besides this, the defendant Rankin, had recovered a judgment against the plaintiff, Craft, (defendant in the proceeding for partition), and said Craft had also executed a mortgage to J. D. Bel-

lamy to secure a debt of $800.   This judgment and mortgage to Bellamy were subsequent to the mortgage to the defendant association, and also subsequent to the commencement of the proceeding to sell for partition, but prior to the sale at which Dreher bought.   While Dreher wanted the property at $1,710, he was not willing to take it at that price subject to these incumbrances, as he considered them, so he withdrew his check, and the sale to him was never confirmed.   While this proceeding to sell for partition was still pending, the defendant association sold under the power of sale contained in its mortgage.   At the time of this sale, on the 31st of August, 1898, there was due on the mortgage debt of Craft to the defendant association the sum of $661.60, and the defendant, Rankin, bid this amount, and the property was knocked off to him.   It also appears from the evidence of McKoy, and other evidence not disputed, that McKoy, as the attorney of the defendant association, advertised the property to be sold under the power of sale contained in the mortgage.

From these facts the plaintiff alleges that the defendant association, being a party to the proceeding to sell for partition, could not sell under the power contained in the mortgage pending that proceeding; that, without alleging fraud or bad faith on the part of McKoy, the plaintiff alleges that McKoy was his attorney in the partition proceeding, and that his action in advertising the sale under power in the mortgage, and acting as attorney for the association, was a legal fraud, and vitiated the sale; that the whole matter,  as he alleges, is suspicious, as Dr. Dreher had bid $1,710 for the land, and had deposited his check, and withdrawn the same, and within a few days after the sale under the mortgage he had bought from the defendant, Rankin, at the same price. And he further alleges that the defendant, Rankin, was the agent of the defendant association, and bought for the asso-

ciation—the mortgagee. But, as the plaintiff in this action ratifies the sale made under the power contained in the mortgage, we are at some loss to see why the plaintiff should allege and insist on matters which he thinks should vitiate and annul the sale made under the mortgage. And we advert to these contentions, which seem to reflect upon Mr. McKoy and Dr. Dreher, for the purpose of showing that, in our opinion, they were not to blame. We have sometimes thought that counsel were not as careful as they should be to avoid complications. But in this case, it seems to us that, Mr. McKoy is not liable to this charge. He was the general counsel of the defendant association at the time he filed the answer in the partition proceeding, and this was known to the plaintiff. There seemed at that time to be no conflict in the interest of the plaintiff and the defendant association, and no reason why he could not represent them both. But, when the sale under the partition proceeding was delayed, the purchaser, Dr. Dreher, refused to take the land owing to the incumbrances. He then went to the plaintiff, and informed him that his first duty was to his original client, the defendant association, and that he would have to sell the land under the power contained in the mortgage, when the plaintiff told him to do so; that he had been deceived in making the second mortgage; that Rankin was his friend, and if anyone was to make anything he had rather it would be Rankin. This, it seems to us, exonerated Mr. McKoy from any just criticism.

Neither can we blame Dr. Dreher for declining to take the lot at a full price, as it was incumbered. It was certainly liable for the back taxes, and we are not prepared to say but what the Bellamy mortgage was such an incumbrance as might have given him trouble. A sale of lands for partition among tenants in common is only a legal means of effecting a sale, and the purchaser only gets the title the tenants had,

subject to incumbrances. Neither are we prepared to say that one tenant in common, by making a mortgagee of another tenant in common a party defendant to a proceeding before the clerk to sell lands for partition, can estop the mortgagee from selling under the power contained in the mortgage. That Court has no equitable jurisdiction; no power to foreclose a mortgage, nor to adjust equities, nor to provide for the payment of mortgage debts out of the proceeds of such sales. And we are unable to see any reason, nor have we been cited to authority, authorizing us to so hold. While mortgagees must act honestly and in good faith towards mortgagors, they must be protected in their rights.

But the defendant association, a corporation created by law, had only a legal entity, and could only act by and through its authorized agents. It could only loan money and take a mortgage through its officers and agents, and could only collect such loans and foreclose such mortgages by such officers and agents. The law makes the officers of corporations—presidents, cashiers, and directors—not only agents, but trustees of the corporation. And the presumption is that any act of theirs, in loaning or collecting the money of the corporation, was done for the corporation. Rankin admits that he was a director of defendant association and chairman of its Finance Committee when the order to foreclose this mortgage was made and at the time of the sale. Rankin, in his testimony, says: "I bid off the property at building and loan foreclosure sale. * * * I bought property in at the amount due the building and loan association, and I paid the building and loan association for it. I then purchased the other one-fifth interest from Mrs. Mathis, and paid her $342." He then says that he paid back taxes; the costs of the proceeding to sell for partition; his own judgment against the plaintiff, Craft, $159; "and I

made $427 net out of the transaction." There is nothing in the evidence to negative the presumption that the defendant, Rankin, was acting for the association at this sale. In fact, his own evidence tends strongly, as we think, to sustain this presumption. He says: "I bid off property at building and loan foreclosure sale. * * * I bought property in at the amount due the building and loan association, and I paid the building and loan association for it." We must therefore hold that the defendant, Rankin, was acting for the defendant association at this sale, and that the defendant association was the purchaser, and that the defendant, Rankin, was the purchaser from the building and loan association after the mortgage sale. If the building and loan association was the purchaser at its own mortgage sale, it was still mortgagee after as before the sale; and, if the defendant bought from it at private sale, while the legal title passed to him, he held subject to the trust and the mortgagor's right of redemption.

The plaintiff, Craft, in this action ratifies the sale of the defendant, Rankin, and asks that he may recover the remainder after paying the debt of the defendant association. The Court below allowed Rankin to retain what he had paid on back taxes, the costs of the proceeding to sell for partition, and the amount of his own judgment of $159 against Craft, and gave judgment against the defendant, Rankin, for $427, which defendant, Rankin, says was his "net profits" left out of the $1,710, for which he sold the land to Dreher, after deducting the taxes, costs, and judgment above specified; and the plaintiff did not appeal, but the defendant, Rankin, did. We see no reason why he should complain of this judgment, and it is affirmed.