J. W. COUNCIL, MARTHA A. COUNCIL, AND HELEN COUNCIL ANDREWS v. GREENSBORO JOINT STOCK LAND BANK, C. E. FLEMING, J. H. BLOUNT, J. K. BLOUNT, AND F. L. BLOUNT.

(Filed 13 April, 1938.)

1. Mortgages § 35a—

Where an officer of the corporate mortgagee purchases the property at foreclosure sale, the presumption is that he acts for the corporation and that it is the purchaser, but such sale is not void, but voidable, and ordinarily can be avoided only by the mortgagor or his heirs and assigns.

2. Mortgages § 39c—Mortgagors held to have waived their right to attack foreclosure by conduct ratifying the sale.

An officer of the corporate mortgagee bought in the property at the foreclosure sale and later transferred title to the mortgagee, which in turn sold the land to third persons. The evidence disclosed that the mortgagor, owning a ⅗ undivided interest, acting for himself and his cotenants, with knowledge that the corporate mortgagee had purchased the land, moved off the land and negotiated by several letters with the mortgagee for the repurchase of the land for himself or his cotenants, and sought to rent the land from the mortgagee but was unable to sell his crops for sufficient money either to buy the land back or to rent same. *Held:* The mortgagors are estopped to assert the invalidity of the sale, since by their conduct they have ratified and affirmed the sale.

**3. Principal and Agent § 8—**

Where tenants in common place one of their number in charge of the farm, and sign a mortgage thereon, and the tenant in charge impliedly represents in his dealings with the mortgagee after foreclosure that he was acting for himself and cotenants, his cotenants are bound by an estoppel arising from his negotiations.

**4. Mortgages § 32a—**

Where the instrument does not designate the place at which foreclosure sale should be held, the mortgagee is vested with sound discretion to select the place of sale, and where it selects the courthouse door in the county in which the land lies, there is no abuse of discretion.

BARNHILL, J., took no part in the consideration or decision of this case.

APPEAL by plaintiffs from *Bone, J.,* at November Term, 1937, of EDGECOMBE.

Civil action to set aside foreclosure sale and deeds pursuant thereto made by and to mortgagee through its agent, and subsequent deed allegedly taken by grantees with notice, and for an accounting for fire insurance collected and for rents, and, in the event it should be decided by the court that the subsequent grantees are innocent purchasers for value, to recover of the mortgagee and its agent, the bidder at the sale, the value of the land, less the mortgage indebtedness.

Material allegations of the complaint as a first cause of action may be found in opinion on former appeal reported in 211 N. C., 262, 189 S. E., 777.

Defendants, Land Bank and C. E. Fleming, filed answer denying material allegations of the complaint, and pleaded that plaintiffs had full knowledge at all times of all the facts and circumstances in connection with the sale and consented thereto, and by their actions ratified same, and are estopped by their conduct to attack the validity of the foreclosure. Defendant Land Bank pleads three-year statute of limitations. The defendants, Blount, after decision of this Court on their appeal, *supra,* filed answer denying all material allegations of the complaint, and pleaded estoppel. All defendants aver that the defendants Blount are innocent purchasers for value.

In the trial below the plaintiffs introduced evidence tending to show that: The plaintiffs, owning a farm in Edgecombe County containing 244.5 acres, J. W. Council three-fifths undivided interest and each of his sisters, coplaintiffs, one-fifth undivided interest, executed to defendant Greensboro Joint Stock Land Bank a mortgage deed on the date and for the purpose alleged. The mortgage provides that in the event of default foreclosure sale may be had at "public auction to the highest bidder for cash, after advertising same for 30 days at least," but does not specify place of sale.

After the loan was made, plaintiff J. W. Council was in charge. He made all payments "until around 1929." In July, 1931, payments being nearly two years in default, defendant Land Bank foreclosed and sold the lands on 21 August, 1931, at the courthouse door in Tarboro, the county seat of Edgecombe, when C. E. Fleming became the highest bidder. Pursuant thereto and on 29 April, 1932, the Land Bank, as mortgagee, executed and delivered deed to C. E. Fleming, in which it is recited that the sale was had "after due and proper advertisement as required by law and the terms of the said mortgage, and that the amount bid is $4,000."

On 6 May, 1932, C. E. Fleming and wife, for recited consideration of $10.00, conveyed the lands by deed to the Land Bank. On 8 January, 1934, the Land Bank, for recited consideration of $10.00, by deed signed in its corporate name and under its seal by C. E. Fleming, president, and duly attested, conveyed the lands to defendants J. H. Blount, M. K. Blount, and F. L. Blount.

Defendants Land Bank and Fleming admit that Fleming was secretary and treasurer of the Land Bank at the time of the foreclosure. The defendants Blount denied any knowledge of that fact. The defendant Land Bank admits that one of the buildings on the property was destroyed by fire, and that it received $1,500 on account of insurance policy held by it. Entry showing foreclosure was made on the margin of the record of the mortgage on 12 January, 1934.

J. W. Council testified. His oral testimony, when read in connection with the letters exchanged between him and the Land Bank, introduced in evidence, presents this narrative in substance: Though he did not see notice of the advertisement in the paper he had a letter and knew the date and place of the sale and came to Tarboro that day. He knew the Land Bank bought the property. After the sale he moved tobacco flues off the place and quit the possession of the land. He wrote the Land Bank that he wanted to redeem the land. He said: "They told me I could redeem it. They told me no deed would be executed before 1 December, and if we would pay the past due installments they would reinstate it. . . . I had negotiations with the Land Bank with reference to renting land in 1932. . . . I tried to rent the farm from Greensboro Joint Stock Land Bank in 1932."

He wrote the Land Bank on 7 November, 1931: "When Mr. Fleming was down here to foreclose farm I thought possibly after selling crop I would be able to pay some on notes and *buy the farm back,* but everything we are selling is from one-third to one-fifth what produce was selling for when I borrowed the money, and it looks like now that the fertilizer company will get about what the crop brings for fertilizer this year. *If your company don't sell the farm* it may be that I could

rent same if you would let the fertilizer company come before your rent, and of course the rent would have to be reasonable. I will be in Greensboro one day next week and will see you or call you up to see if you would care to rent farm as above." Again, on 7 December, 1931: "The reason I had not answered your letter of 9 November was waiting to sell more of the tobacco crop; it sold so low I will not be in position to pay you cash in advance for rent of Farm 1932."

Then on 17 November, 1933, Council wrote Land Bank, in part: "*I am interested in buying farm back,* either me or my sister that company bought in when sold.' . . . I understand the government will make a loan on same. . . ." Land Bank expressed willingness to permit repurchase, but negotiations to that end failed, and on 20 February, 1934, the Land Bank advised J. W. Council that property was sold on 11 January, 1934.

The plaintiff, Mrs. Helen Council Andrews, testified in part that: She knew nothing about the correspondence between her brother, J. W. Council, and the bank after the foreclosure; she did not authorize same; she did not get any of the proceeds of loan, and paid nothing on it; "My brother handled the whole transaction, but I did sign the papers. I turned it all over to my brother." The plaintiff, Martha Council, testified in part that: She did not authorize her brother, J. W. Council, to write the letters to the bank; she never saw one; she did not know the land was foreclosed, and after it was foreclosed she did not authorize her brother to negotiate with the bank; she had not lived on the land in 25 years. She said: "I did not pay any attention to the obtaining of the loan or payments thereon."

At the close of the evidence for plaintiff, defendants and each of them moved for judgment as of nonsuit. Motion was allowed, and from judgment in accordance therewith plaintiffs appealed to the Supreme Court and assigned error.

*Geo. M. Fountain & Son and Bennett & McDonald for plaintiffs, appellants.*

*Arch T. Allen, Gilliam & Bond, and McLean & Stacy for defendants, Greensboro Joint Stock Land Bank and C. E. Fleming.*

*Blount, James & Taft and Fountain & Fountain for appellees, defendants Blount.*

WINBORNE, J. Upon the facts presented in the record on this appeal the judgment of nonsuit was properly entered. It is apparent that plaintiffs have ratified the foreclosure sale.

Where, at a foreclosure sale of land under a mortgage deed by a corporation, mortgagee, an officer of the corporation buys the property, the presumption is that he acts for the corporation, and that it is the pur-

chaser. *Craft v. Assn.,* 127 N. C., 163, 37 S. E., 190; *Shuford v. Bank,* 207 N. C., 428, 177 S. E., 408.

The uniform decisions of this Court hold that: "Where a mortgagee of land purchases at his own sale, directly or by an agent, though he may convey to the agent and have the agent reconvey to him, the effect is to vest the legal estate in the mortgagee in the same plight and condition as he held it under the mortgage, subject to the right of the mortgagor to redeem (*Averitt v. Elliott,* 109 N. C., 560, 138 S. E., 785), unless in some way he releases or loses his equity. . . ." The sale by the mortgagee is not void, but only voidable, and ordinarily can be avoided only by the mortgagor or his heirs and assigns. *Smith v. Land Bank, post,* 343, and cases cited.

Conceding that at the foreclosure sale in the present case the Land Bank, mortgagee, through its agent, purchased the land, it was open to plaintiffs, mortgagors, (1) "To ratify the sale and accept the proceeds, or settled on that basis"; or (2) to pursue one of two remedies: (a) They "may treat the sale as a nullity and have it set aside," or (b), acting in repudiation of the sale, they may sue the mortgagee for the wrong done in making such a sale, and hold it liable for the true worth of the property; cases cited in *Smith v. Land Bank, post,* 343, *supra.*

Here, however, the plaintiffs, contending that they have not ratified the sale, seek to treat the sale as a nullity and have it set aside, and at the same time to hold the mortgagee liable for the true worth of the property. The question of misjoinder, both of parties and of causes of action, is not presented. The former appeal, 211 N. C., 262, discloses that only the defendants Blount, who claim to be innocent purchasers, demurred, and solely for that the complaint does not state facts sufficient to constitute a cause of action against them.

It is apparent, however, from the factual situation here that the plaintiffs, by their conduct, have ratified the foreclosure sale. In *Joyner v. Farmer,* 78 N. C., 196, the Court said: "The estate of the mortgagee acquired by the sale, being voidable only, may be confirmed by any of the means by which an owner of a right in equity may part with it:

"1. By a release under seal, as to which nothing need be said.

"2. Such conduct as would make assertion of his right fraudulent against the mortgagee or against third persons, and which would, therefore, operate as an estoppel against its assertion.

"3. Long acquiescence after full knowledge." *Shuford v. Bank, supra.*

Taking the evidence in the light most favorable to plaintiffs, J. W. Council was in charge of the farm and impliedly represented and acted for his coplaintiffs in the handling of the transaction with the defendant Land Bank. His testimony and letters clearly indicate that, while at the time of the sale he hoped to raise money from the sale of crops to

pay on the notes and to redeem the farm, he failed to realize on that hope, and abandoned the idea of redeeming it. In his letters of 7 November and 7 December, 1931, he gives expression to the hopelessness of the situation, and recognizes the right of the Land Bank to sell the farm. He then set about to rent, and inability to agree on terms of rental prevented him renting the farm for the year 1932—a recognition of title in the Land Bank. The language in the letter of 17 November, 1933, "I am interested in *buying farm back, either me or my sister,"* is pertinent.

All this manifests such conduct as now makes fraudulent their assertion of any right to have the sale as made declared void and set aside. By such conduct they are estopped to maintain this action. *Shuford v. Bank, supra.* They must settle on the basis of sale made.

Where in a mortgage deed power of sale is granted, without designating place of sale, the mortgagee is vested with sound discretion to select the place of sale so as to conserve and promote the interest of all the parties. *Clark v. Homes,* 189 N. C., 703, 128 S. E., 20. Here the mortgagee selected the courthouse door in the county seat of the county in which the land is situated—the usual place for holding public land sales. In doing so there is no abuse of discretion.

The judgment below is

Affirmed.

BARNHILL, J., took no part in the consideration or decision of this case.