BARNHILL, J., concurring in part.
Civil action for recovery of land and to remove cloud on title thereto, and for damages.
Plaintiff alleges and offers evidence tending to show that Ila Surles died on 28 August, 1915, intestate, and seized of a certain tract of land in Robeson County containing 19 1/2 acres, more or less, and leaving surviving her husband, E. H. Surles, and the plaintiff, who was then an infant; that on 16 October, 1915, E. H. Surles was appointed and qualified as administrator of the estate of Ila Surles, and filed bond as such administrator with the defendant O. I. Floyd, and W. Lennon as sureties, that on 23 October, 1915, a special proceeding, entitled "E. H. Surles, Administrator of Ila Surles, deceased, v. Annie Ruth Surles," was instituted in the Superior Court of Robeson County, to sell lands to make assets to pay debts of the estate; that on the same day defendant O. I. Floyd was appointed as guardian ad litem for Annie Ruth Surles; that on 25 October, 1915, by reading same to her, and by leaving copy with Mrs. Jane Butt, with whom she resided, summons was served on Annie Ruth Surles, and service of summons accepted by O. I. Floyd as guardian ad litem; that on 29 October, 1915, petition was filed, in which it is alleged that the debts listed in the petition consisted of three notes dated 27 October, 1914, aggregating $228.40, alleged to be due O. I. Floyd; the personal property is insufficient to pay debts of the estate and costs of administration; the land is "valued at about $500"; and E. H. Surles, husband, and Annie Ruth Surles are heirs at law of Ila Surles; that O. I. Floyd, as guardian adlitem, on 29 October, 1915, filed answer admitting all the allegations of the petition; that on 9 November, 1915, the clerk of the Superior Court, finding that the personal estate is insufficient to pay debts of estate, and that "it is for the best interest of all parties," ordered the lands in question to be sold at private sale, and appointed Woodberry Lennon as commissioner to make the sale; that *Page 80 
on the same day the commissioner reported that on 8 November, 1915, he sold the lands to one L. P. Floyd for $500 cash, which he considered fair and reasonable and recommended that the sale be confirmed and deed made to the purchaser; that on the same day, without any proof as to the adequacy of the purchase price, the sale was confirmed by the clerk of the Superior Court, who ordered deed executed and delivered to the purchaser upon payment of the purchase price, which order was approved by the judge of the Superior Court "presiding" in the Ninth Judicial District; that the commissioner executed a deed to L. P. Floyd, dated 8 November, 1915; that on 30 September, 1918, defendant O. I. Floyd and wife, Lydia P. Floyd, who is the L. P. Floyd to whom the deed was made, conveyed the land in question, with other land, to Cheston Branch and wife for the recited consideration of $2,000; that the plaintiff Annie Ruth Surles Graham was born on 25 June, 1913; that she became twenty-one years of age on 25 June, 1934; that this action was instituted 16 June, 1937; that the land in question was reasonably worth the sum of $200 per acre in 1915.
Plaintiff further alleges that the original papers in the said special proceedings tend to show that the answer of O. I. Floyd, as guardian adlitem, was prepared by the same attorney who prepared the petition; and that in the report of the commissioner and in the decree of confirmation the name of O. I. Floyd was typed and that the initials "O. I." were erased and "L. P." inserted in lieu thereof. For inspection and in support of these allegations plaintiff introduced in evidence the original unregistered judgment roll in said special proceeding.
Plaintiff alleges and contends that on the face of the petition O. I. Floyd appeared as the only creditor of her mother's estate; that as guardian ad litem he admitted the debt, became the purchaser of the land, and had title taken in the name of his wife, L. P. Floyd; and that by reason of these matters the proceeding is a fraud upon the right of the plaintiff, and void; and that the defendant Branch purchased with notice.
Plaintiff further alleges and contends that, if the defendants Branch are purchasers for value without notice, she is entitled by reason of the fraud of defendants Floyd to recover of them the value of the lands.
Defendants deny material allegations, and plead the 3-year statute of limitations. C. S., 441.
From judgment as of nonsuit at the close of plaintiff's evidence, the plaintiff appealed to the Supreme Court, and assigns error.
The plaintiff challenges the correctness of the judgment as of nonsuit. We think the challenge good.
When the personal estate of a decedent is insufficient to pay his debts and charges of the administration, the administrator may, at any time after the granting of letters, apply to the Superior Court for authority to sell the real estate to create assets with which to pay the debts. C. S., 74. "If it be made to appear to the court by petition and by satisfactory proof that it will be more for the interest of the said estate to sell such real estate by private sale" the court may authorize such sale. C. S., 86.
The heirs of the decedent are necessary parties to the proceeding. In such proceeding if any of the defendants are infants under 14 years of age, summons shall be served as provided in C. S., 483 (2). They must defend by their general or testamentary guardian, if they have any within the State. If they have no such guardian, and have been summoned, the court in which the special proceeding is pending, upon motion of any of the parties, may appoint some discreet person to act as guardian ad litem to defend in behalf of such infants. After twenty days notice of the summons and complaint in the special proceeding and after answer is filed by the guardian ad litem, the court may proceed to sign judgment. C. S., 451.Young v. Young, 91 N.C. 359; Welch v. Welch, 194 N.C. 633,140 S.E. 436. The guardian ad litem shall file answer. C. S., 453. It is the duty of the guardian ad litem to protect the interest of the infant.
In Ellis v. Massenburg, 129, 35 S.E. 240, it is said: "The court has no higher duty than the protection of infant defendants, and there can be no trust more sacred than that of a guardian, who must be absolutely free from any interest or motive that can possibly interfere with the faithful performance of his duties. If he has any interest at all in the suit it must be thoroughly consistent with that of his ward's. Even his attorney must be equally disinterested, and a mere colorable interest is a sufficient disqualification for either, if at all adverse. . . . We think that this rule is analogous to that forbidding a trustee to deal with himself, which, though founded upon natural justice and public policy, has become too firmly imbedded in our jurisprudence by repeated decisions to need citation of authorities.
"We may say here that the object of the appointment of a guardian adlitem is to protect the interest of the infant defendant, to which protection he is entitled at every state of the proceeding." Covington v.Covington, 73 N.C. 168; Holt v. Ziglar, 159 N.C. 272, 74 S.E. 813;Morris v. Gentry, 89 N.C. 248.
The defendant O. I. Floyd, asserting a claim against the estate, was disqualified to act as guardian ad litem. But, assuming to act, it was his duty to be faithful to the trust throughout the entire proceeding. *Page 82 
He was in no position to buy at the commissioner's sale, either directly or indirectly. If he bought at the sale, he became constructively trustee for his ward. If he stood by and permitted his wife to buy the land at a price greatly less than its real value, this would be evidence for consideration by the jury in passing on the issue of fraud.
In Patton v. Thompson, 55 N.C. 285, it is aptly said: "Who but the guardian can be relied on to show the property to persons wishing to buy, and to take the necessary steps to make it bring a fair price? Who but the guardian can the court look to for information as to whether the matters have been conducted in such a way as to bring the property to sale under the most advantageous terms, and that in fact it did sell for a fair price?" There the guardian bought at judicial sale. The Court declared that he held the property in trust.
In Froneberger v. Lewis, 79 N.C. 426, after reviewing pertinent authorities, the Court said: "Thus it will be seen that we have a train of decisions — all to the same effect, that a trustee cannot buy the trust property, either directly or indirectly. And, if he does so, he may be charged with the full value, or the sale may be declared void at the election of the cestui que trust, and this without regard to the question of fraud, public policy forbidding it." Council v. Land Bank, 213 N.C. 329,196 S.E. 483; Smith v. Land Bank, 213 N.C. 343, 196 S.E. 481.
Plaintiff contends that the property was worth $3,900 at the time of sale, and that defendant O. I. Floyd bought it through his wife for $500. If the value of the land were greatly in excess of the bid, it would be a circumstance for the consideration of the jury on the issue of fraud. Mere inadequacy of purchase price alone is not sufficient to upset a sale when duly and regularly made. "But gross inadequacy of consideration, when coupled with other inequitable element, even though neither standing alone, may be sufficient for the purpose, will induce a court of equity to interpose and do justice between the parties." Weir v. Weir, 196 N.C. 268,145 S.E. 281; Roberson v. Matthews, 200 N.C. 241, 156 S.E. 496;Creech v. Wilder, 212 N.C. 162, 193 S.E. 281.
The special proceeding to which the present action relates is extremely irregular, but the judgment is not void — but voidable. By reason of the irregularities the judgment may be vacated as to all parties, unless the defendants Branch are innocent purchasers. If it should appear upon the hearing that they are purchasers for value without notice, then the plaintiff is not entitled to recover as against them. "A purchaser for value from one whose deed was procured by fraud gets a good title if he had no notice of the fraud." Phillips v. Lumber Co., 151 N.C. 519,66 S.E. 603; Martin v. Cowles, 18 N.C. 29; Saunders v. Lee, 101 N.C. 3,7 S.E. 590; Odom v. Riddick, 104 N.C. 515, 10 S.E. 609; Cheek v. Squires,200 N.C. 661, 158 S.E. 198. *Page 83 
It is well settled that, in the absence of fraud or the knowledge of fraud, one who purchases at a judicial sale, or who purchased from one who purchased at such sale, is required only to look to the proceeding to see if the court had jurisdiction of the parties and of the subject matter of the proceeding, and that the judgment on its face authorized the sale.Sutton v. Schonwald, 86 N.C. 198; Morris v. Gentry, 89 N.C. 248;England v. Garner, 90 N.C. 197; Fowler v. Poor, 93 N.C. 466; Dickens v.Long, 112 N.C. 311, 17 S.E. 150; Barcello v. Hapgood, 118 N.C. 712,24 S.E. 124; Smith v. Huffman, 132 N.C. 600, 44 S.E. 113; Millsaps v.Estes, 137 N.C. 536, 50 S.E. 227; Carraway v. Lassiter, 139 N.C. 145,51 S.E. 968; Card v. Finch, 142 N.C. 140, 54 S.E. 1009.
In the present case the evidence discloses that on the face of the record in the former special proceeding it appears that the summons was served on the infant defendant, though not in strict compliance with the statute; that a guardian ad litem was appointed upon application of the attorney for petitioner, though the appointment was made before service of summons upon the infant; that the guardian ad litem filed answer; that the petition alleged and the clerk in the order of sale finds that the personal property is insufficient to pay the debts of the estate; that the intestate died seized of the land in question leaving as her only heirs at law, her husband, the administrator, and the infant defendant therein; that the clerk finds that a private sale is to the best interest of all parties, and orders such sale; that the bid of L. P. Floyd is reported and confirmed, and the order of confirmation is approved by the judge presiding over the courts of the district. On these appearances were think the defendants Branch had the right to rely, unless they had actual knowledge of fraud, if any, in the conduct of the proceeding or in the sale of the property.
Plaintiff contends, however, that on reading the petition defendants Branch saw that the only creditor was O. I. Floyd, who was the guardian adlitem of the infant defendant therein. She further contends that, in view of the fact that the judgment roll of the proceedings is not registered, any one examining the title would have read the original papers, and in them have seen that in the report of sale and in the order of confirmation the name of the bidder was typed as "O. I. Floyd," and that the initials "O. I." were erased and the "L. P." inserted in lieu, and that the answer of the guardian ad litem was written on the same typewriter on which petition was written.
We cannot agree that one examining the title is held to constructive knowledge of so minute details. It would be otherwise if there were actual knowledge thereof.
We think the orders of sale and confirmation by the clerk of the Superior Court approved by the Superior Court judge holding the *Page 84 
courts of the district are within the jurisdiction of the court. "That the clerk in the exercise of his probate jurisdiction is an independent tribunal of original jurisdiction is settled." Mordecai in his Law Lectures, Vol. 2, p. 1190, quoted in Hardy v. Turnage, 204 N.C. 538,168 S.E. 823. "The performance of a judicial act necessarily implies a court with both jurisdiction and discretion to hear and rule." Hardy v. Turnage,supra. "A prima facie presumption of rightful jurisdiction arises from the fact that a court of general jurisdiction has acted in the matter. S. v.Adams, 213 N.C. 243, 195 S.E. 822, and cases cited.
However, if the defendant O. I. Floyd bought the land in question, and had the title conveyed to his wife, and they having conveyed the same to innocent purchasers, he may be charged with the full value of the land, and this without regard to the question of fraud.
If the defendant L. P. Floyd, the wife of O. I. Floyd, in reality bid $500 for the land, and he, acting as guardian ad litem, knew that the real value of the land greatly exceeded that amount, and stood by and permitted it to be sold to his wife, this would be a breach of faith and considered on the issue of fraud.
The judgment below is
Reversed.