A. C. FERGUSON ET AL. v. MAJESTIC AMUSEMENT COMPANY
AND T. A. LYNCH.

(Filed 31 May, 1916.)

### 1. Principal and Agent—Contracts—Implied Authority—General Agents.

Where the evidence tends to show that the holder of most of the stock in an amusement corporation wired the agent of a theatrical troupe an offer at a certain price per week, which was accepted, but in pursuance thereof the agent visited the town for the purpose of reducing the contract to writing, saw the manager of the place where he was to perform his engagement, and was referred to one held out by the corporation to be its general manager, who drew the contract and instructed the manager to sign, and it was thus entered into by the parties, with a stipulation that it was to terminate upon two weeks previous notice given by either one thereof to the other: *Held*, under the principle that one is bound by the acts of his agent within the apparent scope of the latter's authority, the corporation was bound by the contract, and was responsible for the legal damages the troupe had sustained owing to the failure of the corporation to give the required previous notice to terminate the contract.

### 2. Principal and Agent—Contracts—Evidence—Knowledge—Ratification.

Where the corporation, owner of places of amusement, has obtained an acceptance of its offer at a certain price per week from a theatrical troupe to give performances in one of these places, and the troupe has thereafter entered into a written contract with one ostensibly the corporation's general agent, based upon the former's offer, but containing a provision for the termination of the contract upon two weeks previous notice by either party, the duration of the contract being otherwise indefinite, the performance by-the troupe in corporation's place of entertainment for two weeks with its knowledge, and evidence that it had endeavored to modify the agreement as to price the troupe was to have been paid, is evidence that the corporation knew of the stipulation as to the previous notice each was to give the.other to terminate the contract, and of its ratification of the contract made in its behalf.

APPEAL by defendants from *Long, J.,* at October Term, 1916, of BUNCOMBE.

Civil action tried upon these issues:

1. Did E. A. Ludette have authority from the defendants to execute the paper-writing set out in the complaint? Answer: "Yes."

2. Are the defendants indebted to the plaintiffs, and if so, in what amount? Answer: "Yes; $650."

From the judgment rendered, the defendants appealed.

*Mark W. Brown for plaintiffs.*
*Lee & Ford for defendants.*

BROWN, J.   This action is brought to recover upon a written contract alleged to have been entered into by plaintiffs and defendants. Under the terms of the contract plaintiffs agreed to furnish a full acting com-

pany at the Majestic Theater, a place of amusement in the city of Asheville conducted by the defendants. The Amusement Company is a corporation under the control of the defendant S. A. Lynch, who owns most of the stock. He and the corporation operate the theater.

Under the contract defendants agreed to pay plaintiffs $325 per week for each week of the engagement, which was indefinite as to duration, but to be terminated only by two weeks written notice by either party.

The plaintiffs arrived in Asheville with their company in due season and commenced to play their engagement.

It is not denied that they were performing the contract in all respects upon their part, when at the end of two weeks, without giving the notice required by the contract, defendant Lynch summarily put an, end to the engagement and directed plaintiffs to remove their company and its belongings from the theater building, which was done.

At the close of the evidence the court overruled the motion to nonsuit. The contention of the defendants is that they are not bound by the contract. The evidence tends to prove that defendant Lynch wired plaintiffs, offering $325 per week, and defendants replied that the terms were acceptable. Ward, the advance agent of the plaintiff, arrived in Asheville, saw Ludette, manager of the Majestic Theater, and asked him who was going to fix up the contract with him. Ludette replied that it would be done by Henery, the general manager of the Majestic Amusement Company, also general agent of the defendant Lynch and the general manager of the Lynch enterprises. The contract was drawn in the office of the defendants by Ludette and turned over by him to Henery to see if it was all right, and see if Ludette must sign it. Henery looked over the contract, which was in duplicate, struck out certain provisions and told Ludette to sign it "E. A. Ludette, Mgr.," which was done. After that Ludette notified plaintiffs by wire. Plaintiffs would not go without a written contract, and received the contract before leaving for Asheville. Plaintiffs opened their engagement at the theater the following Monday and continued their performances for two weeks. The middle of the second week Lynch proposed that he and plaintiffs divide the box receipts in lieu of the weekly guarantee and told defendant that otherwise they would have to close up on the following Saturday night. On Saturday night plaintiffs requested that their baggage stay in the theater overnight. Henery and Ludette agreed, provided plaintiffs would release defendants from the written contract. Plaintiffs refused to sign the release, and the baggage was put out of the house under orders of Henery. For two weeks thereafter plaintiffs were unable to find any work.

Defendant Lynch testified that during the first week of plaintiff's engagement he agreed with them to allow them to work the second week,

provided plaintiffs would make no claim under the contract; and that plaintiffs continued during the second week upon that understanding. Plaintiffs denied that such an agreement was ever entered into. Their version seems to have been accepted by the jury.

The evidence tends to prove that Ludette was the manager of the Asheville Theater, and had before signed contracts for that theater by Lynch's authority. Henery was the general manager of all of Lynch's enterprises, which are extensive and embraced many theaters. The evidence shows that Henery was the general agent of the defendant and was so held out to the public by them. He exercised all the powers and performed all the duties generally incident to the position of a general agent, with the knowledge of defendants and presumably by their authority. He supervised the preparation and execution of the contract with plaintiffs, and directed Ludette to sign it on behalf of defendants. The contract embodied the offer Lynch himself had made by wire; but as no time limit had been fixed, it was mutually agreed that the engagement should be terminated only upon two weeks written notice. This provision was inserted with Henery's consent and was equally advantageous to both parties, as well as practically necessary in a contract without a definite limit to its duration. The act of Henery in reducing the contract to writing was well within the apparent authority of a general manager, especially of theatrical enterprises. Henery did not transcend the powers usually conferred upon and exercised by a general agent. If there were any limitations upon such powers in his case, they had not been made known and plaintiffs were ignorant of them. The terms of the contract were not unusual, or such as to put plaintiffs upon inquiry as to the extent of Henery's authority, and the two weeks notice required for its termination was of mutual benefit to both. Under such circumstances the law holds the principal liable for the act of the general agent.

"The principal is bound by all the acts of his agent within the scope of the authority which he holds him out to the world to possess, although he may have given him more limited private instructions, unknown to the persons dealing with him; and this is founded on the doctrine that where one of two persons must suffer by the act of a third person, he who has held that person out as worthy of trust and confidence, and as having authority in the matter, shall be bound by it." *Carmichael v. Buck,* 10 Rich. Law, 332 (70 Am. Dec., 226) ; Story on Agency, sec. 127.

Where a person by words or conduct represents or permits it to be represented that another person is his agent, he will be estopped to deny the agency as against third persons who have dealt, on the faith of such representation, with the person so held out as agent, even if no agency existed in fact." *Trollinger v. Fleer,* 157 N. C., 81; *Metzger v. Whitehurst,* 147 N. C., 171.

These cases fairly illustrate this doctrine and define its limits. They are quoted in the opinion of *Justice Walker* in *Latham v. Field*, 163 N. C., 360, where the subject is fully discussed. The same principle is stated by *Justice Hoke* in *Powell v. Lumber Co.*, 168 N. C., 635: "A general agent is said to be one who is authorized to act for his principal in all matters concerning a particular business or employment of a particular nature. Tiffany on Agency, p. 191. And it is the recognized rule that such an agent may usually bind his principal as to all acts within the scope of his agency, including not only the authority actually conferred, but such as is usually 'confided to an agent employed to transact business which is given him to do,' and it is held that, as to third persons, this real and apparent authority is one and the same, and may not be restricted by special or private instructions of the principal unless the limitations sought to be placed upon it are known to such persons or the act or power in question is of such an unusual character as to put a man of reasonable business prudence upon inquiry as to the existence of the particular authority claimed." See, also, *Gooding v. Moore*, 150 N. C., 198; *Stephens v. Lumber Co.*, 160 N. C., 107.

Furthermore, there is evidence tending to prove a ratification of the contract by defendant Lynch. He knew the plaintiffs were fulfilling their engagement, and permitted them to continue without interruption for a week and a half. During the first week the attendance was very large, but fell off during the second week. It was not till then that he notified plaintiffs they must abandon the contract and play on a percentage basis or leave at the end of that week, which was then half spent. Lynch is not only presumed by law to have knowledge of the contract under which plaintiffs were playing in his theater, but his acts show that he had actual knowledge of it. If the evidence of plaintiffs is to be believed, he endeavored to persuade plaintiffs to rescind the contract and play on a percentage basis, and, failing in that, to compel them to do so under threat of expulsion from the theater.

Taking the evidence as a whole, we have no doubt that his Honor properly denied the motion to nonsuit and correctly submitted the matter to the jury upon the issues. The exceptions to the evidence and to the charge have been considered, and in our opinion are without merit and need not be discussed.

No error.