DANIEL BOONE COMPLEX, INC., A NORTH CAROLINA CORPORATION, CAMILCO, INC., A VIRGINIA CORPORATION, CLARENCE A. McGILLEN, JR., AND LINDA S. BROYHILL McGILLEN, PLAINTIFFS v. MITCHELL FURST, INDIVIDUALLY, MITCHELL FURST, TRUSTEE, AND MATTHEW MEZZANOTTE, DEFENDANTS

───────────

MITCHELL FURST, TRUSTEE, PLAINTIFF v. CAMILCO, INC. AND CLARENCE A. McGILLEN, JR., DEFENDANTS

───────────

CAMILCO, INC., PLAINTIFF v. MITCHELL FURST, TRUSTEE, MITCHELL FURST, INDIVIDUALLY, DANIEL BOONE COMPLEX, INC., DALTON H. LOFTIN, TRUSTEE, JAMES J. FREELAND AND WIFE, MAXINE H. FREELAND, CENTRAL CAROLINA BANK AND TRUST COMPANY, ASSIGNEE, MATTHEW H. MEZZANOTTE AND WIFE, GENEVIEVE D. MEZZANOTTE, DEFENDANTS

No. 7815SC847

(Filed 2 October 1979)

1. **Estoppel § 4.3; Trusts § 13.3— furnishing purchase price of land—resulting trust—recognition of title in another—estoppel to assert equity of redemption**

   Even though the property in question was conveyed by a corporation to secure an agent's loan to a second corporation, the second corporation was the owner of the equity of redemption, mortgagor, to the extent that it furnished the first corporation a portion of the purchase price; however, the second corporation was estopped by the doctrine of ratification from asserting the existence of its equity of redemption, since, in the execution of an agreement to repurchase the land upon certain conditions, the second corporation recognized the existence of the title in the agent.

2. **Conspiracy § 6— principal and agent—misrepresentation by agent—no conspiracy**

   Evidence was sufficient to support the trial court's findings as to the absence of a conspiracy to defraud appellants where appellants contended that

an agent and principals conspired to defraud them of their interests in certain property by intentionally misrepresenting the identity of the lender of their money, but there was competent evidence before the court indicating that the principals had not instructed the agent to lie as to their identity.

**3. Fraud § 12— loan and mortgage with unidentified party—misrepresentation as to identity—inducement to borrow—failure to make finding—error**

Where the trial court found that the agent of lenders had intentionally misrepresented the identity of his undisclosed principals, the court erred in failing to determine what significance the agent's misrepresentation had on borrower's execution of the loan, since there was fraud only if borrower was induced by the misrepresentation to obtain money from the agent's lenders and would not have otherwise done business with those particular lenders.

**4. Fraud § 12— loan and mortgage with unidentified party—damage—sufficiency of evidence of fraud**

There was no merit to respondents' contention that the trial court did not err in its determination of no fraud because appellants suffered no damage as a result of an agent's misrepresentation concerning the identity of lenders, since the execution of a loan and mortgage agreement with a party with whom appellants did not wish to deal would be sufficient injury to constitute an essential element of fraud.

**5. Judgments § 41— validity of sale of stock—consent judgment—res judicata**

Appellants were estopped from contending that an agent's sale of stock of an amusement park corporation, purportedly authorized by the power of sale in a deed of trust, was invalid because no default existed under the mortgage terms, since the parties had entered into a consent judgment expressly providing that the sale of the stock was valid, the judgment had been entered by a federal court, and the judgment was therefore *res judicata* as to matters in issue between the parties and their privies.

**6. Principal and Agent § 5; Mortgages and Deeds of Trust § 4— apparent authority to act as agent—deed of trust—no description of land**

Though a person had apparent authority to act as an agent for a borrower in executing an agreement to modify the borrower's prior agreement with lenders and their agent, the modification agreement was nevertheless without legal effect, since such agreement failed to contain a description of the land being conveyed by deed of trust and therefore failed to satisfy the requirement of the statute of frauds.

APPEAL by plaintiffs in Case Nos. 75CVS561 and 74CVS882 and defendants in Case No. 74CVS889 from *McKinnon, Judge.* Judgment entered 14 December 1977 in Superior Court, ORANGE County. Heard in the Court of Appeals 30 May 1979.

Matthew Mezzanotte and his wife, Genevieve Mezzanotte, (hereinafter the Mezzanottes) contracted to purchase the Daniel

Boone Complex from James J. Freeland and his wife, Maxine H. Freeland, (hereinafter the Freelands). The complex is an 83 acre amusement park and campground in Hillsborough. The Mezzanottes assigned their rights in the purchase contract to Daniel Boone Complex, Inc. (hereinafter Daniel Boone), a North Carolina corporation then wholly owned by the Mezzanottes. The Mezzanottes sold all ten shares of Daniel Boone stock to Camilco, Inc. (hereinafter Camilco), a Virginia corporation wholly owned by its president and sole stockholder, Linda S. Broyhill a.k.a. Linda S. Broyhill McGillen. Camilco, as partial payment for the Daniel Boone stock, executed a promissory note in the face amount of $100,000 which was to become due and payable at the time of the Daniel Boone and Freeland closing. Daniel Boone, a wholly owned subsidiary of Camilco, was to go to settlement on the sale of the complex but did not have sufficient monies to pay the expected and required settlement costs. Clarence McGillen, husband of Camilco's president and sole stockholder, approached Mitchell Furst, principal in a Washington, D. C. title company, seeking a loan in an amount sufficient to satisfy the settlement costs. Furst, acting as agent for the Mezzanottes who were undisclosed principals, agreed to loan Camilco $136,550.73 in return for Camilco's secured note, obligating it to repay $273,101.46 with interest thereon at eight percent interest. As security for the loan, Furst received (1) a pledge of the ten shares of Daniel Boone stock, (2) the pledge of two $100,000 Metropolitan Real Estate Investment Trust notes, and (3) a conveyance to him of the legal title to the complex with a companion security and trust agreement. The loan had been structured as a Virginia transaction in order to evade the usury laws of North Carolina. At the initial loan closing attempt in North Carolina, McGillen had asked Furst whether his undisclosed principals were the Mezzanottes. Furst intentionally denied that the Mezzanottes were the undisclosed principals. After the loan was restructured as a Virginia transaction, the loan was made. Using the funds from the Furst loan to Camilco, Daniel Boone, Camilco's wholly-owned subsidiary, purchased the complex, acquired legal title, and then conveyed title to Furst to secure Furst's loan to Camilco.

A portion of the loan money, $20,000, was earmarked for payment of the premium for fire and casualty insurance coverage, which was required under the terms of the purchase money deed

of trust executed and given by Daniel Boone to Dalton H. Loftin, trustee for the Freelands, while $10,600 was allocated for title insurance and title search expenses.

Instead of using the $20,000 to purchase fire and casualty insurance, Gant Redmon, attorney for Camilco and Daniel Boone, applied a portion of the money for other purposes and arranged for financing of the insurance premiums through AFCO Credit Corporation. The Freelands, sellers and mortgagees of the complex, and Loftin, trustee, insisted that they receive acceptable evidence of fire and casualty insurance on the complex. They threatened to foreclose if they did not receive adequate assurances of coverage.

Meanwhile, Furst paid $5,000 of the $10,000 allocated for title insurance and search fees to A. B. Coleman, Jr., but no title insurance was ever procured by Furst for the benefit of Daniel Boone and Camilco. Furst wrote the Metropolitan Real Estate Investment Trust to advise them that their notes had been endorsed to him as collateral security. He was informed that the notes were not valid obligations of the trust, because they had not been authorized nor properly issued. Furst informed Camilco that the invalidity of the notes given as collateral security for their loan constituted a condition of default under the terms of the parties' agreement. Furst and Mezzanotte then took possession of the complex. Exercising his power of sale under the deed of trust, Furst sold the ten shares of Daniel Boone stock given him as collateral security and filed suit in the United States District Court for the Eastern District of Virginia seeking a declaratory judgment that the sale of the Daniel Boone stock under the power of sale was valid. Furst also filed suit in Case No. 74CVS889 in Superior Court, Orange County, praying for an injunction to prohibit Camilco and Clarence McGillen from interfering with his operation of the complex.

Camilco and Daniel Boone filed suit in Case No. 74CVS882 praying that (1) Camilco be declared the owner of the Daniel Boone stock, (2) the foreclosure sale be set aside, and (3) the $273,101.46 loan be declared usurious. Subsequently, McGillen, acting purportedly as Camilco's vice-president, entered into an agreement with Furst which provided for (1) entry of a consent judgment as to the validity of the sale of the stock, (2) refinancing

of the Furst-Camilco loan, (3) cancellation of the original $273,101.46 promissory note, and (4) tendering of $27,005 by Furst to cure the default in the Freeland purchase money trust and/or to contest the proposed foreclosure by the Freelands. Paragraphs 6 and 8 of the agreement provided:

"6. The parties hereto reserve all rights arising from the original transaction between Mitchell Furst, Trustee, and Camilco, Inc.

. . .

8. The parties hereto agree to forthwith dismiss without prejudice or to cause to be dismissed without prejudice, all lawsuits that have been instituted by and between them."

The United States District Court judge entered the following order:

"Upon agreement of counsel and the undersigned, that they have settled and compromised their differences and that the declaratory judgment sought should be entered; it is

ADJUDGED, ORDERED and DECREED that the plaintiff had the right to convey and did convey title in fee simple absolute to all the issued and outstanding shares of Daniel Boone Complex, Inc., a North Carolina corporation, to Judith S. Maley for Hillsboro Properties, Inc., a District of Columbia corporation, at a public sale held on July 8, 1974. . .."

Two weeks later, McGillen, apparently on behalf of Camilco, agreed with Furst to cancel the prior executed agreement.

Loftin, acting as trustee under the Freeland deed of trust, instituted foreclosure proceedings when they did not receive evidence that the complex was insured. The Freelands purchased the property at the foreclosure sale.

Camilco filed suit in Case No. 75CVS561 seeking damages allegedly arising from the original Furst-Camilco loan agreement on the grounds that: (1) Furst had misrepresented the identity of his undisclosed principals, the Mezzanottes; (2) the Mezzanottes and Furst had engaged in a conspiracy to deprive Camilco of its property interest in the complex; and (3) Furst had breached the parties' original agreement to take all steps necessary to prevent

foreclosure on the property by the Freelands, even though the Freelands had been willing to consent to a judgment against them.

Furst, the Mezzanottes, and Daniel Boone denied the material allegations of Camilco's complaint and pleaded the cancellation of the parties' original agreement as bar to enforcement of their agreement to prevent the foreclosure. They also asserted that the doctrine of *res judicata* and collateral estoppel precluded any claims arising from the sale of the Daniel Boone stock. Camilco amended its complaint to allege its right to recover under the theory of either a resulting or constructive trust.

The trial court allowed for consolidation of the suits in Case Nos. 74CVS882, 74CVS889, 75CVS561, and a companion case, Case No. 74CVS1135. After hearing all the evidence, the trial court concluded that: (1) the taking possession of the property and the foreclosing of the stock by Furst were not wrongful, and the McGillens and Camilco had not shown any right to damages from Furst or the Mezzanottes; (2) the Mezzanottes were entitled to judgment against Camilco for the recovery of the $100,000 note given to the Mezzanottes for the purchase of the Daniel Boone stock; and (3) Camilco is entitled to judgment against the Mezzanottes for double the amount of usurious interest paid and the amount of $5,600 with interest thereon for the title insurance policy premium that had never been obtained. Plaintiffs in Case Nos. 75CVS561 and 74CVS882 and defendants in Case No. 74CVS889, Daniel Boone, Camilco, and the McGillens appealed.

*Everett, Everett, Creech & Craven, by Robinson O. Everett; and Robert E. Cooper, for plaintiff appellants.*

*Newsom, Graham, Hedrick, Murray, Bryson & Kennon, by Josiah S. Murray III, for defendant appellees.*

ERWIN, Judge.

The threshold issue essential to determination of the questions raised by appellants is what were the respective rights of the parties at the beginning of the loan transactions?

[1] Daniel Boone Complex, Inc. executed a purchase money deed of trust to the Freelands in the amount of $1,085,000 to secure the purchase price of the complex. This deed of trust had priority

over the amount of money secured by the Furst-Camilco loan. Camilco asserts that since it furnished the consideration, the $136,550.73 used for settlement costs, it was the owner of the equity of redemption *ab initio*. This is not altogether correct.

Daniel Boone's conveyance of title to the complex property to Furst was intended as a mortgage. A mortgage or deed of trust to secure a debt passes legal title to the mortgagee or trustee, as the case may be, but the mortgagor or trustor is looked on as the equitable owner of the land with the right to redeem at any time prior to foreclosure. This right, after the maturity of the debt, is designated as his equity of redemption. *Riddick v. Davis*, 220 N.C. 120, 16 S.E. 2d 662 (1941).

In the absence of circumstances indicating a contrary intent, where one person pays the purchase price for land, but legal title is taken in the name of another for whom he is under no duty to provide, a trust in favor of the payor arises by operation of law and attaches to the subject of the purchase. *Vinson v. Smith*, 259 N.C. 95, 130 S.E. 2d 45 (1963); *Grant v. Toatley*, 244 N.C. 463, 94 S.E. 2d 305 (1956); *Summers v. Moore*, 113 N.C. 394, 18 S.E. 712 (1893); *accord, Campbell v. Freeman*, 99 Cal. 546, 34 P. 113 (1893). To the extent that Camilco furnished funds enabling Daniel Boone to purchase the property, a resulting trust arose in its favor. *Cline v. Cline*, 297 N.C. 336, 255 S.E. 2d 399 (1979); *McWhirter v. McWhirter*, 155 N.C. 145, 71 S.E. 59 (1911); *Cunningham v. Bell*, 83 N.C. 328 (1880); Edwards and Van Hecke, Purchase Money Resulting Trusts in North Carolina, 9 N.C. L. Rev. 177, 185 (1930-31).

We are well aware that the presumption of a resulting trust which arises from the furnishing of consideration to another who purchases the property in his own name is a rebuttable one. Edwards and Van Hecke, *supra*. However, the record before us is void of any evidence that the money furnished by Camilco was intended as a loan, *Cf. In re Gorham*, 173 N.C. 272, 91 S.E. 950 (1917); *Lassiter v. Stainback*, 119 N.C. 103, 25 S.E. 726 (1896), nor have the respondents raised this contention below.

Even though the property was conveyed by Daniel Boone to secure Furst's loan to Camilco, Camilco was the owner of the equity of redemption, mortgagor, to the extent that it furnished

Daniel Boone a portion of the purchase price. *Cline v. Cline, supra.*

In Osborne, Nelson & Whitman's, Real Estate Finance Law, § 3.20, pp. 70-71 (1979), the law of mortgages of tripartite transactions is stated as follows:

> " '. . . The conveyance is nonetheless a mortgage because it was conveyed to him directly by a third party, to secure his loan to the purchaser for the amount of the purchase money, than if the conveyance had been made directly to the purchaser in the first instance, and the purchaser had then made a conveyance to him, as a security for the money that he had previously borrowed with which to make the purchase.' "

Even so, we hold that Camilco is estopped by the doctrine of ratification from asserting the existence of its equity of redemption.

Camilco voluntarily executed the July 30th agreement, which stated:

> "WHEREAS, pursuant to the terms of a Security and Trust Agreement dated March 14, 1974, title in fee simple absolute to that real and personal property known as Daniel Boone Complex, located at Hillsborough, North Carolina, as further described in that deed dated March 14, 1974, was conveyed by Daniel Boone Complex, Inc., to Mitchell Furst, Trustee."

In the agreement, Camilco arranged to repurchase the land upon certain conditions. In doing so, it recognized the existence of the title in Furst. *See Council v. Land Bank*, 213 N.C. 329, 196 S.E. 483 (1938). Where, in the course of making a contract, the title of one party or the other to the property involved in the transaction is recognized, and the dealing proceeds on that basis, both parties are ordinarily estopped to deny that title or to assert anything in derogation of it. 31 C.J.S., Estoppel, § 125, p. 656. We hold that by executing the July 30th agreement, Camilco acknowledged the existence of Furst's ownership of the property in fee simple absolute. *Cf. Denson v. Davis*, 256 N.C. 658, 124 S.E. 2d 827 (1962).

Appellants contend that the trial court erred in finding that it had not been damaged by civil conspiracy or fraud on the part

of Furst and the Mezzanottes. We affirm the trial court's findings as to civil conspiracy, but we must reverse its ruling on the question of fraud.

[2]   An action for civil conspiracy will lie when there is an agreement between two or more individuals to do an unlawful act or to do a lawful act in an unlawful way, resulting in injury inflicted by one or more of the conspirators pursuant to a common scheme. *Shope v. Boyer*, 268 N.C. 401, 150 S.E. 2d 771 (1966); *Burton v. Dixon*, 259 N.C. 473, 131 S.E. 2d 27 (1963); 3 Strong's N.C. Index 3d, Conspiracy, § 1, p. 144. Appellants contend that Furst and the Mezzanottes conspired to defraud them of their interests in the property by intentionally misrepresenting the identity of the lender of their money. The trial court had competent evidence before it indicating that the Mezzanottes had not instructed Furst to lie as to their identity. Since there is competent evidence to support it, the trial court's finding must be upheld as to the absence of a conspiracy to defraud appellants.

[3]   Where an owner of land is induced by fraud or misrepresentation to execute a mortgage which he would not have given if fully and truly informed of the circumstances, the fraud thus practiced on him will be fatal to the validity of the instrument. 59 C.J.S., Mortgages, § 141, p. 186. Only recently, we set out the elements of fraud in our State as follows:

> "While our courts have been hesitant to formulate an all-embracing definition of fraud, the Supreme Court has stated the following elements of actionable fraud in *Ragsdale v. Kennedy*, 286 N.C. 130, 138, 209 S.E. 2d 494, 500 (1974): '(1) False representation or concealment of a material fact, (2) reasonably calculated to deceive, (3) made with intent to deceive, (4) which does in fact deceive, (5) resulting in damage to the injured party.' "

*Russo v. Mountain High, Inc.*, 38 N.C. App. 159, 162, 247 S.E. 2d 654, 656-57 (1978).

The trial court found in its findings of fact that Furst had intentionally misrepresented the identity of his undisclosed principals, the Mezzanottes. In doing so, the trial court focused on the Mezzanottes' reasons for not having their identity revealed; however, the court's crucial inquiry, as trier of fact, should have

focused on what significance Furst's misrepresentation of the identity had on Camilco's execution of the Furst-Camilco loan.

A contract can be avoided against one who through misrepresentation on his part or the part of his agent has become a party to it knowing that someone else was intended or knowing merely that he was not intended to be a party. *Pearce v. Desper*, 11 Ill. 2d 569, 144 N.E. 2d 617 (1957); Restatement (Second) of Agency § 304 (1957); *see also Walker v. Galt*, 171 F. 2d 613 (5th Cir. 1948), *cert. denied*, 336 U.S. 925, 93 L.Ed. 1086, 69 S.Ct. 656 (1949). The rule does not differ when the identity of a money lender is the fact being misrepresented. *Gordon v. Street*, 2 Q.B. 641 (1899). Persons borrowing money may very well consider the identity of their lender. In the instant case, Camilco has presented evidence indicating that it would not have dealt with the Mezzanottes for various reasons. We hold that the trial court erred in not making any determination of fact on the existence of this requisite element of fraud.

[4] Respondents contend that, even if evidence of the first four elements of fraud exists, the trial court did not err in its determination of no fraud, because appellants suffered no damage. It is true that the appellants do not presently have any liability on the original $273,101.46 promissory note. Should the court determine that the identity of the undisclosed lenders, the Mezzanottes, was essential to Camilco's execution of the loan and mortgage agreements, Camilco would be able to meet the requisite damage element of fraud. The execution of the loan and mortgage agreement with a party with whom it did not wish to deal would be sufficient injury.

Ordinarily, a party who has been fraudulently induced to enter into a contract or sale has a choice of remedies. He may repudiate the contract, and tendering back what he has received under it, may recover what he had parted with or its value; or he may affirm the contract, keeping whatever property or advantage he has derived under it, and may recover in an action for deceit the damages caused by the fraud. *Parker v. White*, 235 N.C. 680, 71 S.E. 2d 122 (1952). In the instant case, appellants have chosen to affirm the original loan transaction. Their complaints pray the court to declare the loan usurious and to award punitive damages for the fraud. They have elected to maintain their actions, con-

cerning the validity of the Furst-Camilco loan, as one based on fraud. Thus, appellants are not entitled to rescission even if they establish fraud. *See Parker v. White, supra; Hutchins v. Davis*, 230 N.C. 67, 52 S.E. 2d 210 (1949); *Fields v. Brown*, 160 N.C. 295, 76 S.E. 8 (1912); *Van Gilder v. Bullen*, 159 N.C. 291, 74 S.E. 1059 (1912).

Should the trial court determine that Furst's fraudulent misrepresentation of the identity of his undisclosed principals induced Camilco to execute the loan and mortgage agreements, then Camilco would be entitled to recover any damages shown to result therefrom. *Clark v. Lumber Co.*, 158 N.C. 139, 73 S.E. 793 (1912); 37 Am. Jur. 2d, Fraud and Deceit, § 293, pp. 390-91. Thus, we need not decide the constructive trust issue presented by appellants.

[5] Appellants contend that Furst's sale of the Daniel Boone stock, purportedly authorized by the power of sale in the deed of trust, was invalid, because no default existed under the mortgage terms. We hold that the appellants are estopped from raising this contention.

In the order entered by Judge Bryan of the United States District Court for the Eastern District of Virginia, it was adjudged and decreed that Furst's sale of the Daniel Boone stock under the deed of trust's power of sale was valid. A declaratory judgment has the force and effect of a final judgment or decree. 22 Am. Jur. 2d, Declaratory Judgments, § 102, p. 970. Such a judgment is, therefore, *res judicata* of the matters at issue as between the parties and their privies, even where it is a consent judgment that is involved. 22 Am. Jur. 2d, Declaratory Judgments, § 102, p. 971.

In North Carolina, the law of consent judgments is stated as follows:

> " 'A judgment by consent is the agreement of the parties, their decree, entered upon the record with the sanction of the court. (Citations) It is not a judicial determination of the rights of the parties and does not purport to represent the judgment of the court, but merely records the preexisting agreement of the parties. (Citations) It acquires the status of a judgment, with all its incidents, through the ap-

proval of the judge and its recordation in the records of the court.' *McRary v. McRary*, 228 N.C. 714, 719, 47 S.E. 2d 27, 31. Accord: *Owens v. Voncannon*, 251 N.C. 351, 354, 111 S.E. 2d 700, 703; 3 Strong, N.C. Index, Judgments § 8."

*Cranford v. Steed*, 268 N.C. 595, 598, 151 S.E. 2d 206, 208 (1966). A valid consent judgment is entitled to *res judicata* effect, so as to preclude relitigation of the same claim or cause of action as was covered by the judgment. *See Gaither Corp. v. Skinner*, 241 N.C. 532, 85 S.E. 2d 909 (1955); *Yancey v. Yancey*, 230 N.C. 719, 55 S.E. 2d 468 (1949); Annot., 91 A.L.R. 3d 1176-77 (1979); *see also Randle v. Grady*, 228 N.C. 159, 45 S.E. 2d 35 (1947).

The consent judgment in question expressly provides that the sale of the foreclosure stock was valid. Essential to such determination was the existence of default. We hold that appellants are estopped by the consent order from denying the existence of a default under the terms of the mortgage. Consequently, appellants' argument that Furst and the Mezzanottes wrongfully obtained possession of the complex is overruled.

A consent judgment is often referred to as an agreement of the parties. *See Owens v. Voncannon*, 251 N.C. 351, 111 S.E. 2d 700 (1959); *McRary v. McRary*, 228 N.C. 714, 47 S.E. 2d 27 (1948); 8 Strong's N.C. Index 3d, Judgments, § 8, p. 24. Since it is a "creature" of contract, a consent judgment may be modified by the parties. However, because the order or judgment is entered by the court upon the consent of the parties, it cannot subsequently be opened, changed, or set aside, even with the consent of the parties, unless an appropriate legal proceeding is brought. *See King v. King*, 225 N.C. 639, 35 S.E. 2d 893 (1945); *Keen v. Parker*, 217 N.C. 378, 8 S.E. 2d 209 (1940). The rationality of the rule is exemplified in the instant case. The parties entered into an agreement providing for, among other things, the entry of a consent judgment as to the validity of the sale of the Daniel Boone stock. Subsequently, the Federal District Court entered the consent judgment. Later, the parties attempted to modify their prior agreement and accordingly, declare the court's consent judgment void. This they could not do. Although the parties to a consent judgment are free to modify the terms of their contract, the consent judgment has all the incidents of a regular judgment, *see McRary v. McRary*, 228 N.C. 714, 47 S.E. 2d 27 (1948), and is not a

nullity. The judgment could be altered only with the court's sanction in an appropriate proceeding.

[6] Appellants contend that the parties' modification agreement executed after the entry of the consent judgment was without legal effect. We agree.

Where a person by words or conduct represents or permits it to be represented that another person is his agent, he will be estopped to deny the agency as against third persons who have dealt, on the faith of such representation, with the person so held out as agent, even if no agency existed in fact. *Ferguson v. Amusement Co.*, 171 N.C. 663, 89 S.E. 45 (1916); *Trollinger v. Fleer*, 157 N.C. 81, 72 S.E. 795 (1911). The rule is equally applicable when a corporation holds out or permits a person to hold himself out as its agent. *Moore v. WOOW, Inc.*, 253 N.C. 1, 116 S.E. 2d 186 (1960); 19 Am. Jur. 2d, Corporations, § 1164, p. 590.

Camilco contends that it is not bound by Clarence McGillen's execution of the modification agreement, because no resolution of the board of directors authorized it. No formal resolution is needed. The power to act in a particular matter may be inferred from the circumstances. *Yaggy v. B.V.D. Co.*, 7 N.C. App. 590, 173 S.E. 2d 496 (1970); Robinson, North Carolina Corp. Law, § 13-6, p. 267 (2d ed., 1974); 19 Am. Jur. 2d, Corporations, § 1176, p. 601. In the present case, Clarence McGillen had acted for Camilco throughout their dealings with Furst and the Mezzanottes. He had taken care of most of the business affairs of the corporation and had executed the original agreement embodying the consent judgment. The execution of the original agreement was purportedly as vice-president. Camilco was aware of the former representation of his status and had subsequently ratified his execution of the agreement. The record reveals that after McGillen realized the adverse effect of his signing the second agreement, he sought to invalidate it by having the corporation repudiate his actions. Mrs. McGillen testified:

"[W]ith respect to the purported agreement of August 17, 1974, my husband and I jointly prepared corporate minutes, being Exhibit '0-4,' reflecting disapproval of this particular transaction. Since the date is August 19, it would have been a meeting sometime after the 19th. The purpose of preparing these minutes was to reject the August 17 agreement."

The question of whether an agent of a corporation does have express, implied, or apparent authority is a question of fact. *Yaggy v. B.V.D. Co., supra.* We have no doubt that, at the very least, McGillen had apparent authority to execute the modification agreement.

Parties to a contract may, by mutual consent, agree to change its terms, but to be effective as a modification, the new agreement must possess all the elements necessary to form a contract. *Peaseley v. Coke Co.,* 12 N.C. App. 226, 182 S.E. 2d 810, *cert. denied,* 279 N.C. 512, 183 S.E. 2d 688 (1971); *Electro Lift v. Equipment Co.,* 4 N.C. App. 203, 166 S.E. 2d 454 (1969); 3 Strong's N.C. Index 3d, Contracts, § 18, p. 408. The parties' modification of their prior agreement is unenforceable.

A valid contract to convey land must contain, expressly or by necessary implication, all the essential features of an agreement to sell, one of which is a description of the land, certain in itself or capable of being rendered certain by reference to an extrinsic source designated therein. *Kidd v. Early,* 289 N.C. 343, 222 S.E. 2d 392 (1976); *Lane v. Coe,* 262 N.C. 8, 136 S.E. 2d 269 (1964); *Kelly v. Kelly,* 246 N.C. 174, 97 S.E. 2d 872 (1957). Since both mortgages and deeds of trust are conveyances of land, they must meet all the requirements for transferring land. Webster, Real Estate Law in North Carolina, § 230, p. 274 (1971).

Here, the modification agreement between the parties specifically referred to Exhibit A for description of the property. However, Exhibit A was not contemporaneously delivered and is not available to provide an adequate description of the land. *Cf. Mezzanotte v. Freeland,* 20 N.C. App. 11, 200 S.E. 2d 410 (1973), *cert. denied,* 284 N.C. 616, 201 S.E. 2d 689 (1974). The modification agreement is unenforceable because of failure to satisfy the requirement of the Statute of Frauds, *see Herring v. Merchandise, Inc.,* 249 N.C. 221, 106 S.E. 2d 197 (1958), and the parties' original agreement (July 30th) was still in effect. Restatement of Contracts § 223 (1932).

We have carefully reviewed appellants' assignments of error dealing with the trial court's findings of fact. Except to the extent inconsistent with the foregoing text of this opinion, we find them to be supported by competent evidence. However, the court's

findings of fact as to damages and credits should be reconsidered in accordance with our opinion.

The judgment entered below is

Reversed and remanded.

Judges MARTIN (Robert M.) and ARNOLD concur.