NIEMEYER, Circuit Judge, concurring in part and dissenting in part:
Because I believe that ample evidence supports the jury’s verdict finding that the ABC defendants acted fraudulently, I dissent from Part II.A.1. of the majority opinion. I am pleased to join the remainder.
I
The transactional facts are not disputed. In order to obtain an inside story, ABC’s PrimeTime Live devised a plan by which ABC’s employees would falsely represent themselves to Food Lion to obtain jobs in its stores and then would secretly film the activities of Food Lion’s employees, including themselves, using miniature “spy cam” equipment.
In applying for jobs at Food Lion stores, ABC reporters Lynne Dale and Susan Barnett misrepresented themselves, their experience, and their references, even though they certified that their applications were complete and truthful. More fundamentally, they misrepresented themselves as bona fide applicants for employment. They were already employees of ABC and knew that within a week or two they would no longer be working for Food Lion. After Food Lion gave them jobs at stores in North Carolina and South Carolina, Dale and Barnett roamed the stores to obtain film footage for PrimeTime Live. While some of the film footage so obtained was damaging to Food Lion, these reporters contributed to the damage. For example, when Barnett saw food that she suspected to be out of date, she sold it to her camera crew rather than throw it away. Similarly, she attempted to sell such food to a customer. When these reporters obtained their film footage — after two weeks for Barnett and one week for Dale — they quit their jobs at Food Lion and provided the videotapes to ABC’s PrimeTime Live for broadcast on national television.
The jury returned a verdict against the ABC defendants based on fraud and awarded Food Lion $1,400 in compensatory damages and over $5.5 million in punitive damages. The district court remitted the $5.5 million punitive damage award to $315,000. I would affirm this judgment.
*525 II
The elements of a fraud claim under North Carolina law are “(1) [a][f]alse representation or concealment of a material fact, (2) reasonably calculated to deceive, (3) made with intent to deceive, (4) which does in fact deceive, (5) resulting in damage to the injured party.” Myers & Chapman, Inc. v. Thomas G. Evans, Inc., 323 N.C. 559, 374 S.E.2d 385, 391 (N.C.1988) (emphasis omitted) (quoting Ragsdale v. Kennedy, 286 N.C. 130, 209 S.E.2d 494, 500 (N.C.1974)). The requirements under South Carolina law are similar. See Florentine Corp. v. PEDA I, Inc., 287 S.C. 382, 339 S.E.2d 112, 113-14 (S.C.1985).
In reversing the jury’s fraud verdict, the majority agrees with the ABC defendants that Food Lion failed to prove the injury element of its fraud claim because the expenses it incurred in training at-will employees could not be claimed as damages. The majority explains, “North and South Carolina are at-will employment states, and under the at-will doctrine it is unreasonable for either the employer or the employee to rely on any assumptions about the duration of employment.” Ante, at 513.
I respectfully disagree, and my disagreement focuses on (1) the difference in hiring a person who intends to work indefinitely and a person who intends to work one or two weeks and fails to disclose that intent, and (2) the ABC employees’ misrepresentation of loyalty inherent in their application for a job. I will discuss these in order.
A
The majority concludes that there is no difference in Food Lion’s unwitting employment of ABC reporters who intend to leave within one or two weeks and employment of applicants who have no specific intent about the duration of their employment because both types of the employment are “at will.” This, however, overlooks the difference between a bona fide at-will employee and an undercover news reporter who knows from the beginning that she will stay only two weeks. With the former, normal risks allow for the possibility that Food Lion can obtain long-term, experienced, faithful service from which it can recover its training expenses; with the latter there is no such possibility.
Applicants for employment, even at-will employment, present themselves representing by implication: (1) that they want to become employees; (2) that they intend to work indefinitely, until a change in circumstances leads them or their employer to terminate the arrangement; (3) that there is a possibility that they would become long-term employees; and (4) that they will be loyal employees as long as they work, prepared to work at the promotion of their employer’s business. ABC’s undercover reporters presented themselves to Food Lion, representing all of these matters falsely. They did not, during the application process, disclose that they did not intend to become employees at all. Indeed, they were already employed by ABC, and their application for employment with Food Lion was only a sham to get them into locations within Food Lion where they otherwise would not be permitted. Moreover, the ABC employees had no intention of allowing the normal risks of at-will employment to govern their term; they knew from the beginning that they were to be at Food Lion only long enough to obtain damaging information.
In training new employees and investing in their future, Food Lion has a right to assume that the normal risks attend the relationship and that some of those employees will eventually become experienced and loyal employees who will provide a return on the costs of training them. The fact that Food Lion would not make such an investment in an applicant if the applicant stated that she was an ABC employee only seeking inside information and that she would leave after two weeks defines the injury sustained by Food Lion. Indeed, *526 far less injury is required by law. Where a plaintiff presents evidence that the defendant’s fraudulent misrepresentation induced the plaintiff to deal “with a party with whom it did not wish to deal,” “sufficient injury” has been shown “to meet the requisite damage element of fraud” and the plaintiff is “entitled to recover any damages shown to result therefrom.” Daniel Boone Complex, Inc. v. Furst, 43 N.C.App. 95, 258 S.E.2d 379, 386-87 (N.C.Ct.App.1979). Not only was Food Lion induced to hire persons it would not otherwise have hired, it was induced to spend money on persons whose potential for employment was nil, contrary to the potential of a bona fide applicant for at-will employment.
B
Similarly and perhaps more importantly, Dale and Barnett’s implied representations that they would be loyal Food Lion employees injured Food Lion. Both North Carolina and South Carolina law provide that implicit in any contract for employment is the duty of the employee to “remain faithful to the employer’s interest throughout the term of employment.” Berry v. Goodyear Tire & Rubber Co., 270 S.C. 489, 242 S.E.2d 551, 552 (S.C.1978); see also McKnight v. Simpson’s Beauty Supply, Inc. 86 N.C.App. 451, 358 S.E.2d 107, 109 (N.C.Ct.App.1987) (“[T]he law implies a promise on the part of every employee to serve his employer faithfully”). And when an employee acts adversely to the interest of his employer, he is disloyal and his discharge is justified. Berry, 242 S.E.2d at 552.
In this case, Dale and Barnett never intended to work as loyal employees for Food Lion and to promote the business of Food Lion. On the contrary, they applied to Food Lion with the secret intent to obtain sensational and damaging evidence to publish against Food Lion. And in furtherance of that purpose they even failed to do what they were hired to do. As one snippet from their videotape shows, instead of cleaning a meat grinder that a loyal employee would have undertaken to clean, even if the task were not specifically assigned to the employee, the ABC employee photographed the dirty meat grinder and offered it as an example of poor food-handling practices. Moreover, in seeking to “uncover” practices, the ABC employees baited fellow employees to say and do things that they knew would undermine Food Lion’s standing food-handling practices. Indeed, a portion of the majority opinion, which I have joined, concludes that these employees breached their duties of loyalty to Food Lion and, in doing so, caused Food Lion damage. I believe that this very breach and injury, when intended from the very beginning, also supports Food Lion’s fraud claim.
Ill
In short, the ABC employees misrepresented their potential for staying at Food Lion and they misrepresented their loyalty. Food Lion had less of a chance— indeed, no chance — of developing experienced, long-term, and loyal employees because the likelihood of that possibility was misrepresented. If these ABC employees had disclosed their true identities and intentions accurately, Food Lion would never have hired them and incurred expenses to train them on the chance that they would stay because the employees had already determined there was no such chance.
In my judgment, the jury had ample evidence to reach the conclusion that the ABC defendants committed common law fraud, and I would affirm its verdict.